**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |
|---|---|
| ANGIE KESACK, as Parent and Natural Guardian of AJK, a minor,<br><br>      Plaintiff,<br><br>    v.<br><br>ROBLOX CORPORATION, EPIC GAMES, INC., MICROSOFT CORPORATION, MOJANG AB, and JOHN DOES 1-50,<br><br>      Defendants. | Case No. 2:25-cv-06607<br><br>Hon. Mia Roberts Perez |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS MICROSOFT
CORPORATION AND MOJANG AB'S MOTION TO COMPEL ARBITRATION AND
<u>STAY LITIGATION</u>**

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ................................................................................................................. 1

BACKGROUND ................................................................................................................. 2

    A.    Microsoft and Xbox Account Users Agree to Be Bound by the MSA. .................. 3

    B.    The MSA Contains a Conspicuous, Mandatory Arbitration Agreement................ 4

    C.    Microsoft Notifies Users of Updates to the MSA................................................. 5

    D.    The MSA Contains Specific Provisions Binding Minors and their Parents. .......... 6

    E.    Kesack and AJK Accepted the MSA. ................................................................... 6

        1.    Account Created by Kesack and used by AJK............................................ 6

        2.    AJK's Ongoing Use of Xbox Services........................................................ 8

ARGUMENT....................................................................................................................... 8

    A.    The Arbitration Agreement in the MSA is Enforceable...................................... 10

    B.    Kesack Accepted the MSA on Her Own and AJK's Behalf.................................11

    C.    AJK Accepted the MSA Through Continued Use Following Notice. .................. 12

    D.    Estoppel Independently Binds AJK to the Arbitration Agreement. ..................... 13

    E.    AJK is Bound to the MSA's Terms as a Third-Party Beneficiary. ....................... 14

    F.    Plaintiff's Claims Fall Within the Arbitration Agreement's Broad Scope. ........... 15

CONCLUSION................................................................................................................... 17

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Ackies v. Scopely, Inc.*,
2022 WL 214541 (D.N.J. Jan. 25, 2022) ................................................................................12

*Angelilli v. Activision Blizzard, Inc.*,
2025 WL 524276 (N.D. Ill. Feb. 18, 2025) ............................................................................14

*Antonetti v. Activision Blizzard, Inc.*,
764 F. Supp. 3d 1309 (N.D. Ga. 2025) ....................................................................................9

*AT&T Mobility LLC v. Concepcion*,
563 U.S. 333 (2011) ...........................................................................................................15, 16

*AT&T Techs., Inc. v. Commc'ns Workers of Am.*,
475 U.S. 643 (1986) .................................................................................................................15

*Autochoice Unlimited, Inc. v. Avagard Auto Finance, Inc.*,
9 A.3d 1207 (Pa. 2010) ............................................................................................................16

*Battle v. Microsoft Corp.*,
2024 WL 4555687 (D. Md. Oct. 23, 2024) ........................................................................2, 12

*Bouriez v. Carnegie Mellon Univ.*,
359 F.3d 292 (3d Cir. 2004) .....................................................................................................13

*Cornelius v. CVS Pharmacy Inc.*,
133 F.4th 240 (3d Cir. 2025) .....................................................................................................9

*Courtright v. Epic Games, Inc.*,
766 F. Supp. 3d 873 (W.D. Mo. 2025) ......................................................................................9

*Dean Witter Reynolds, Inc. v. Byrd*,
470 U.S. 213 (1985) ...................................................................................................................8

*Dobbs v. Health IQ Ins. Servs., Inc.*,
2022 WL 2974713 (E.D. Pa. July 27, 2022) ...........................................................................10

*Doe v. Samsung Elecs. Am., Inc.*,
2025 WL 1970245 (E.D. Pa. July 16, 2025) ...........................................................................12

*E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates*
269 F.3d 187 (3d Cir. 2001) .....................................................................................................12

*First Options of Chi., Inc. v. Kaplan*,
514 U.S. 938 (1995)...............................................................................................10

*Frank v. Volkswagenwerk, A.G. of West Germany*,
522 F.2d 321 (3d Cir. 1975)...................................................................................13

*Frutera Agrosan Export SPA v. MSC Mediterranean Shipping Co., S.A.*,
727 F. Supp. 3d 526 (E.D. Pa. 2024) .....................................................................16

*Gay v. CreditInform*,
511 F.3d 369 (3d Cir. 2007)...................................................................................10

*Global Travel Marketing, Inc. v. Shea*,
908 So. 2d 392 (Fla. 2005).....................................................................................15

*Griswold v. Coventry First LLC*,
762 F.3d 264 (3d Cir. 2014)...................................................................................13

*Guidotti v. Legal Helpers Debt Resolution, L.L.C.*,
716 F.3d 764 (3d Cir. 2013).....................................................................................8

*HealthplanCRM, LLC v. AvMed, Inc.*,
458 F. Supp. 3d 308 (W.D. Pa. 2020)...............................................................11, 13

*Hine v. LendingClub Corp.*,
2023 WL 8113234 (W.D. Pa. Nov. 22, 2023) ....................................................10, 11

*J.A. through Allen v. Microsoft Corp.*,
2021 WL 1723454 (W.D. Wash. Apr. 2, 2021).........................................................2

*Johnson v. Activision Blizzard, Inc.*,
2025 WL 679033 (E.D. Ark. Mar. 3, 2025) .............................................................9

*Kirleis v. Dickie, McCamey & Chilcote, P.C.*,
560 F.3d 156 (3d Cir. 2009).....................................................................................9

*Maher v. Microsoft Corp.*,
2018 WL 1535043 (N.D. Ill. Mar. 29, 2018).............................................................2

*Mendoza v. Microsoft Inc.*,
2014 WL 4540225 (W.D. Wash. Sep. 11, 2014) ......................................................2

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
473 U.S. 614 (1985)...............................................................................................15

*Orellana v. Roblox Corp.*,
769 F. Supp. 3d 1273 (M.D. Fla. 2025)....................................................................9

iii

*Reibstein v. CEDU/Rocky Mountain Acad.*,
  2000 WL 1858718 (E.D. Pa. Dec. 19, 2000)..........................................................................14

*Romanov v. Microsoft Corp.*,
  2021 WL 3486938 (D.N.J. Aug. 9, 2021) ...............................................................................2

*Saeedy v. Microsoft Corp.*,
  757 F. Supp. 3d 1172 (W.D. Wash. 2024).........................................................................2, 12

*Santiago v. Philly Trampoline Park, LLC*,
  343 A.3d 995 (Pa. 2025) ...........................................................................................13, 15, 16

*Sayers v. Activision Blizzard, Inc.*,
  2025 WL 2553735 (S.D. Ga. Sep. 4, 2025).............................................................................9

*Troxel v. Granville*,
  530 U.S. 57 (2000)..................................................................................................................15

*Walsh v. Microsoft Corp.*,
  2014 WL 4168479 (W.D. Wash. Aug. 20, 2014)....................................................................2

*Washburn v. N. Health Facilities, Inc.*,
  121 A.3d 1008 (Pa. Super. Ct. 2015)....................................................................................13

**Statutes**

9 U.S.C. §§ 2–4, Federal Arbitration Act ("FAA")................................................................ *passim*

**INTRODUCTION**

Plaintiff Angie Kesack filed this lawsuit asserting claims exclusively on behalf of her child, AJK, who she alleges was harmed by using Microsoft's services to play games including Minecraft. These claims do not belong in court; they belong in arbitration under the binding terms of the Microsoft Services Agreement ("MSA").

Kesack agreed to the terms of the MSA, for herself and on behalf of AJK, by creating Microsoft and Xbox accounts required for AJK to access Microsoft services, including games. Insofar as AJK created any Microsoft and Xbox accounts to access those services directly, AJK was likewise required to agree to the MSA.  AJK could not have used Xbox services or any Xbox device to play the games alleged in the Amended Complaint without first entering into the MSA, whether directly or through their parent, Kesack.  *See* Declaration of Michael Scari ("Scari Decl.") ¶¶ 3–5; Declaration of Juliamarie Abbott ("Abbott Decl.") ¶¶ 3–4.  Moreover, AJK manifested acceptance by continuing to use these accounts after Microsoft sent notices that included links to the MSA and expressly cautioned that continued use constituted assent to its terms.  *See* Scari Decl. ¶¶ 7–10; Scari Decl. Ex. A § 4(a)(iii).  Thus, both AJK and Kesack, acting on AJK's behalf, accepted the MSA through a clear, enforceable method of notice and assent and are bound by its express terms. Even if this direct assent theory did not apply (and it does), AJK is independently bound to the MSA as a third-party beneficiary through Kesack's agreement and under settled estoppel principles.

Under the MSA, AJK and Kesack agreed that "any claim or controversy between" them and Microsoft "concerning [Microsoft's] Services" is subject to binding arbitration.  Scari Decl. Ex. A § 15(a).  This provision plainly encompasses Kesack's core contention that AJK was injured by using Microsoft's Xbox services to play games, and it must therefore be enforced under the Federal Arbitration Act ("FAA").  9 U.S.C. §§ 2–4.  Indeed, courts have repeatedly compelled arbitration

1

under the MSA where, as here, a user of Microsoft and/or Xbox services has assented to the MSA's terms.[1]

In short, the Court should enforce Kesack's and AJK's agreements with Microsoft by directing their dispute with Microsoft and Mojang to arbitration and staying the claims against those Defendants pending arbitration.[2]

## BACKGROUND

Microsoft offers a broad range of online consumer services, including Xbox services and Minecraft. *See* Scari Decl. Ex. A, Intro. & "Covered Services." Xbox is an interactive video gaming system that includes both home consoles that can be used to access games like Minecraft and online video game services. Abbott Decl. ¶¶ 2–3. "Xbox services" collectively refers to the Xbox online service, Xbox Game Studios games, applications, subscriptions (e.g., Xbox Game Pass), services (e.g., Xbox Live and Xbox Cloud Gaming), and content provided by Microsoft. Scari Decl. Ex. A ¶ 14(a)(i). Minecraft is a video game developed by Mojang AB, a wholly owned subsidiary of Microsoft. Am. Compl. ¶¶ 26–27. The MSA is an agreement between consumers and

---

[1]    *See, e.g.*, *Saeedy v. Microsoft Corp.*, 757 F. Supp. 3d 1172, 1198, 1202, 1211 (W.D. Wash. 2024) (compelling arbitration where plaintiffs assented to the MSA during account creation process and by continued use after notification); *Battle v. Microsoft Corp.*, 2024 WL 4555687, at *5–8 (D. Md. Oct. 23, 2024) (same); *Romanov v. Microsoft Corp.*, 2021 WL 3486938, at *3–4 (D.N.J. Aug. 9, 2021) (same, based on "clear and unambiguous" arbitration clauses in MSA and related agreement); *J.A. through Allen v. Microsoft Corp.*, 2021 WL 1723454, at *3–4, *7–9 (W.D. Wash. Apr. 2, 2021), *report and recommendation adopted*, 2021 WL 1720961 (W.D. Wash. Apr. 30, 2021) (compelling arbitration and noting that plaintiffs "were required to accept" the MSA to create an Xbox account after August 2015 and "were required to accept [MSA] updates" to continue using Xbox services); *Maher v. Microsoft Corp.*, 2018 WL 1535043, at *4–6 (N.D. Ill. Mar. 29, 2018) (compelling arbitration where plaintiff clicked to accept the MSA "three times" in connection with three Microsoft accounts); *Walsh v. Microsoft Corp.*, 2014 WL 4168479, at *2–5 (W.D. Wash. Aug. 20, 2014) (by clicking "I accept" upon notification of Xbox terms of use, plaintiff entered "unmistakable and clear agreement to arbitrate"); *Mendoza v. Microsoft Inc.*, 2014 WL 4540225, at *3–5 (W.D. Wash. Sep. 11, 2014) (compelling arbitration where plaintiffs were notified of the Xbox terms of use and clicked to accept them).

[2]    Plaintiff filed an Amended Complaint on March 5, 2026, just one day before this Motion was due under the Court's briefing schedule. The Amended Complaint does not alter Microsoft and Mojang's entitlement to arbitration for the reasons set forth herein.

Microsoft and its affiliates that governs services including Minecraft and Xbox services. *See* Scari Decl. ¶ 6 & Ex. A, Intro. & "Covered Services."

The Amended Complaint alleges that AJK has played video games including Minecraft using Xbox services from 2018 to the present. Am. Compl. ¶¶ 9, 13–14. In creating and using the accounts necessary for AJK to access the alleged games and services, Kesack and AJK were presented with and agreed to the MSA multiple times.

### A.    Microsoft and Xbox Account Users Agree to Be Bound by the MSA.

To use Xbox services, including to play games, a user must first create a Microsoft account and an associated Xbox account. Abbott Decl. ¶¶ 3–4; Scari Decl. ¶ 2; Am. Compl. ¶ 267. AJK has at least one Xbox account or gamertag (a unique Xbox username selected by the user), ▮▮▮▮▮▮▮▮▮▮▮ *See* Abbott Decl. ¶¶ 3, 5(a).

***Microsoft Account Creation.*** The ▮▮▮▮▮▮▮▮▮▮ Xbox account used by AJK was created using a preexisting Microsoft account. *See* Abbott Decl. ¶ 5(a); Scari Decl. ¶ 10(a). To create a Microsoft account, which is a prerequisite to creating an Xbox account, a prospective user may register using a personal email address. Scari Decl. ¶ 3; Abbott Decl. ¶ 4. All prospective users must affirmatively accept and agree to the then-current MSA before they can create a Microsoft account. *Id.* Below is an example screenshot from the Microsoft account creation process:

Scari Decl. ¶ 3.  As shown above, to finish creating a Microsoft account, a prospective user must click the "Next" button directly below the notice stating: "Choosing **Next** means that you agree to the Microsoft Services Agreement and privacy and cookies statement."  *Id. ¶* 4.  The phrases in blue contain hyperlinks that, when clicked, link to a copy of the MSA or privacy and cookies statement.  *Id.*  A prospective user cannot create, access, or use a Microsoft account unless and until they affirmatively accept the MSA by clicking "Next."  *Id.*  Microsoft's systems automatically record the date and time a user creates an account.  *Id.*  This process has remained materially unchanged since 2012: any user would have been presented with (1) the hyperlinked MSA and (2) notice that clicking "Next" (or previously, "I Agree") constituted agreement to the MSA.  *Id.* ¶¶ 4–5.

### B.    The MSA Contains a Conspicuous, Mandatory Arbitration Agreement.

Since August 30, 2019, the effective date of the earliest MSA Kesack assented to on behalf of AJK, the MSA has included a conspicuous arbitration clause, which has remained materially the same in requiring arbitration of all disputes concerning the covered "Services."  *See* Scari Decl. Exs. A–G.  The 2025 MSA, which Kesack and AJK most recently assented to, announces the arbitration provision under the MSA's title, in bold capital letters:

> **IF YOU LIVE IN . . . THE UNITED STATES, PLEASE READ THE BINDING ARBITRATION CLAUSE . . . IN SECTION 15.  IT AFFECTS HOW DISPUTES ARE RESOLVED.**

*See* Scari Decl. Ex. A.  The MSA's opening page provides a "Summary of Arbitration Provisions" with a blue, underlined hyperlink to Section 15, which contains the following arbitration agreement:

> 15. **Binding Arbitration and Class Action Waiver If You Live In . . . the United States.**  We hope we never have a dispute, but if we do, you and we agree to try for 60 days, upon receipt of a Notice of Dispute, to resolve it informally.  If we can't, you and we agree to **binding individual arbitration before the American**

Arbitration Association ("AAA") under the Federal Arbitration Act ("FAA"), and not to sue in court in front of a judge or jury.

*Id.* § 15. Under the agreement, "dispute" is defined "as broad[ly] as it can be" to "include[] any claim or controversy between you and us concerning the Services, the software related to the Services, the Services' or software's price, your Microsoft account, marketing, communications, your purchase transaction, billing, or these Terms, under any legal theory including contract, warranty, tort, statute, or regulation[.]" *Id.* § 15(a). This provision applies to disputes between users and "Microsoft and Microsoft's affiliates." *Id.* § 15. The "Services" include "Minecraft games" and various Xbox services, including Xbox Cloud Gaming, Xbox Game Pass, Xbox Live, and the Xbox Store. *Id.* ("Covered Services").

Microsoft has no record of Kesack rejecting changes to the arbitration agreement, though the MSA provides instructions for doing so. Scari Decl. ¶ 11 & Ex. A § 15(f).

### C.    Microsoft Notifies Users of Updates to the MSA.

Section 7 of the MSA states that users agree to be bound by future MSA changes, after Microsoft provides notice:

> [Microsoft] may change these Terms at any time, and we'll tell you when we do. Using the Services after the changes become effective means you agree to the new terms. If you don't agree to the new terms, you must stop using the Services, close your Microsoft account and, if you are a parent or guardian, help your minor child close his or her Microsoft account.

*Id.* § 7(a). Each time Microsoft updates the MSA, it notifies users, including through emails to their registered email addresses. Scari Decl. ¶¶ 7–9 & Exs. H (2025 MSA Update Email), I (2024 MSA Update Email). Microsoft sends the email notice before the update's effective date, giving users ample time to review the terms and stop using and close their accounts if they do not agree to the updated MSA. Scari Decl. ¶¶ 7–8. Microsoft also alerts users of changes to the MSA via "interrupt" notices that pop up on the user's screen stating that Microsoft has updated its MSA and

5

providing a link to the full text of the MSA, labeled "Learn More."  *Id.* ¶ 9 & Ex. J (example interrupt notice).  To dismiss the interrupt notice and proceed to use the covered Microsoft product or service, the account holder must click to acknowledge the notice.  Scari Decl. ¶ 9.

### D. The MSA Contains Specific Provisions Binding Minors and their Parents.

Section 4 of the MSA separately sets forth how all of these terms can be agreed to in the case of a minor and a parent, like AJK and Kesack, respectively.  Specifically, after outlining how users may create a Microsoft account, Section 4(a)(iii) states, under the heading "**Kids and Accounts**," that "[b]y creating a Microsoft account *or* using the Services, you accept and agree to be bound by these Terms . . . ."  Scari Decl. Ex. A (second emphasis added).  With respect to minors, the user must "represent that [the user] ha[s] either reached the age of 'majority' where [they] live or [thei]r parent or legal guardian agrees to be bound by these Terms on [thei]r behalf."  *Id.*  It directs minors to "ask your parent or legal guardian for help" if they do not understand the terms.  *Id.*  And in the event that the individual creating the account is in fact "a parent or legal guardian" acting on behalf of a minor, the MSA reiterates that both "you *and* the minor accept and agree to be bound by these Terms and are responsible for all use of the Microsoft account or Services, . . . whether the minor's account is now open or created later."  *Id.* (emphasis added).  As noted in the previous section, the MSA expressly contemplates updates to its terms and provides that users agree to updated terms by continued use following notice.  *Id.* § 7(a).

### E. Kesack and AJK Accepted the MSA.

#### 1. Account Created by Kesack and used by AJK.

Through counsel, Plaintiff identified ███████████ as an Xbox gamertag used by AJK on which Plaintiff's claims rely.  *See* Declaration of Sozi Pedro Tulante ("Tulante Decl.") ¶ 8.  That account was created in 2024 and reflects some Roblox usage, minimal Fortnite activity, and

no Minecraft activity whatsoever.  *See* Abbott Decl. ¶ 5(a).  This record is insufficient to support Plaintiff's broad and detailed allegations against Microsoft, including that AJK began playing Minecraft, Roblox, and Fortnite on the Xbox platform around 2018 and has continued to play these games "at an increasing, uncontrollable, compulsive, and/or addictive pace."  Am. Compl. ¶¶ 9, 13–14.  Despite multiple requests from Microsoft and Mojang—and Plaintiff's agreement to provide this information—Plaintiff has failed to identify any other valid Xbox gamertag or Xbox or Microsoft account information associated with Plaintiff or AJK.  *See* Tulante Decl. ¶¶ 2–12.[3]

The ▮▮▮▮▮▮▮▮▮▮ Xbox account, as well as the underlying Microsoft account, are registered to "Angie Kesack" with a birthdate of ▮▮▮▮▮▮▮—matching when Kesack was born.  *See* Abbott Decl. ¶ 5(a); Scari Decl. ¶ 10(a); Tulante Decl. ¶ 13(a).  The email address listed on both accounts▮▮▮▮▮▮▮▮▮▮▮▮—is also associated with Angie Kesack.  *See* Abbott Decl. ¶ 5(a); Scari Decl. ¶ 10(a); Tulante Decl. ¶ 13(b).  This account information suggests that the ▮▮▮▮▮▮▮▮▮ account was created by Kesack and, as confirmed by Plaintiff, used by AJK.

The Microsoft account associated with the ▮▮▮▮▮▮▮▮ Xbox account was created on ▮▮▮▮▮▮▮▮▮.  Scari Decl. ¶ 10(a).  The associated Xbox account was created on ▮▮▮▮▮, using the Xbox app on an Android device.  Abbott Decl. ¶ 5(a).  To create the Microsoft account necessary for AJK's Xbox account, Kesack was required to agree to the MSA on AJK's behalf.  *See id.* ¶ 4; Scari Decl. ¶¶ 3–5; Scari Decl. Ex. A § 4(a)(iii).

---

[3]    Microsoft and Mojang therefore reserve the right to supplement this Motion should additional relevant accounts come to light.  To the extent Plaintiff, acting on AJK's behalf, or AJK directly created additional Xbox accounts for AJK's use, they were required to accept the MSA as a condition of creating and using those accounts.  *See* Abbott Decl. ¶ 4; Scari Decl. ¶¶ 3–5.

### 2. AJK's Ongoing Use of Xbox Services.

The ▮▮▮▮▮▮▮▮▮ Xbox account and the associated Microsoft account remain open and have been used to access Xbox services from as early as ▮▮▮▮▮▮, through at least ▮▮▮▮▮▮. Abbott Decl. ¶ 5(a); Scari Decl. ¶ 10(a). It was used to play Roblox as recently as ▮▮▮▮▮▮ and Fortnite as recently as ▮▮▮▮▮▮▮—substantiating, at least in part, Plaintiff's allegation that AJK played, and continues to play, video games on Microsoft's Xbox platform. *See* Abbott Decl. ¶ 5(a); Am. Compl. ¶¶ 9, 13–14.

Microsoft has sent multiple notices of MSA updates to Kesack's email address associated with the ▮▮▮▮▮▮▮▮▮ account, most recently on ▮▮▮▮▮▮▮ (2024 MSA update) and on ▮▮▮▮▮▮ (2025 MSA update). Scari Decl. ¶¶ 7–8, 10(a) & Exs. H–I. Microsoft has also issued interrupt notices for each update, linking to the MSA and requiring the recipient to acknowledge the notification before continuing to use their Microsoft account. Scari Decl. ¶ 9 & Ex. J. Interrupt notices of MSA updates were most recently acknowledged by the underlying Microsoft account on ▮▮▮▮▮▮▮. Scari Decl. ¶ 10(a). As alleged in the Amended Complaint, AJK was actively using the associated Xbox account during this time. Indeed, the ▮▮▮▮▮▮▮▮▮ Xbox account was used to play Roblox on ▮▮▮▮▮▮▮, on an Xbox console and on ▮▮▮▮▮▮▮ on a Windows PC. *See* Abbott Decl. ¶ 5(a).

### ARGUMENT

Kesack and AJK repeatedly agreed to the MSA. Neither could have created the accounts required for AJK to access Xbox services without doing so. *See* Abbott Decl. ¶ 4; Scari Decl. ¶¶ 3–5. Moreover, Microsoft sent Kesack and AJK multiple notifications of MSA updates. *See* Scari Decl. ¶¶ 8–10; Exs. H–J. Despite agreeing to arbitrate disputes with Microsoft multiple times—through account creation, service usage, and acceptance of updated terms—Kesack still filed this action on AJK's behalf in this Court.

The FAA "leaves no place for the exercise of discretion by a district court."  *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985).  Instead, "district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed."  *Id.*; *see also Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 776 (3d Cir. 2013) ("[W]hen it is apparent . . . that certain of a party's claims 'are subject to an enforceable arbitration clause, a motion to compel arbitration should be considered under a Rule 12(b)(6) standard.'" (citation omitted)).  Thus, while a court may consider evidence outside the pleadings and apply the Rule 56 summary judgment standard where there are factual disputes regarding arbitration, *see Cornelius v. CVS Pharmacy Inc.*, 133 F.4th 240, 249 (3d Cir. 2025) (citation omitted), it must grant a motion to compel arbitration where there is "(1) a valid agreement to arbitrate" and "(2) the particular dispute falls within the scope of that agreement."  *Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 160 (3d Cir. 2009) (citations omitted).

Courts have consistently enforced arbitration agreements under the FAA, including in other so-called "gaming addiction" cases filed by minors and their parents.  *See, e.g.*, *Courtright v. Epic Games, Inc.*, 766 F. Supp. 3d 873, 887–94 (W.D. Mo. 2025) (mother and minor child compelled to arbitration because each had independently entered into valid arbitration agreements with defendants); *Antonetti v. Activision Blizzard, Inc.*, 764 F. Supp. 3d 1309, 1320–21 (N.D. Ga. 2025) (compelling arbitration where minor plaintiff accepted agreement upon account creation); *Sayers v. Activision Blizzard, Inc.*, 2025 WL 2553735, at *12 (S.D. Ga. Sep. 4, 2025) (compelling arbitration where plaintiff clicked to accept applicable terms of use).  Likewise, courts have enforced agreements to arbitrate with minors in cases involving other providers of video game services.  *Orellana v. Roblox Corp.*, 769 F. Supp. 3d 1273, 1283–84 (M.D. Fla. 2025) (finding that minors N.O. and J.O. were bound by the arbitration agreements with Epic and Sony that they signed

when they created accounts to play Fortnite at ages nine and seven); *Johnson v. Activision Blizzard, Inc.*, 2025 WL 679033, at *3–4 (E.D. Ark. Mar. 3, 2025) (concluding that the plaintiff, who was a minor at the time he signed the End-User License Agreement, entered into a valid agreement to arbitrate with Epic by accepting the EULA).

This case warrants no different result.

### A.    The Arbitration Agreement in the MSA is Enforceable.

The MSA's arbitration clause is valid and enforceable.  Federal courts make this assessment by "apply[ing] ordinary state-law principles that govern the formation of contracts."  *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995).  Here, Pennsylvania law governs because Kesack alleges that she and AJK are Pennsylvania residents, the MSA's choice-of-law provision directs application of the user's home state law, and Pennsylvania courts generally honor the intent of the contracting parties.  *See* Am. Compl. ¶¶ 11, 13; Scari Decl. Ex. A § 11; *Gay v. CreditInform*, 511 F.3d 369, 389 (3d Cir. 2007).

Courts in the Third Circuit have developed a straightforward test for clickwrap agreements like the MSA: they are enforceable where "notice of the agreement is 'reasonably conspicuous and manifestation of assent unambiguous as a matter of law.'"  *Hine v. LendingClub Corp.*, 2023 WL 8113234, at *6 (W.D. Pa. Nov. 22, 2023).  This approach reflects the practical reality that when users click to accept terms after receiving clear notice and opportunity to review, they have formed binding contracts.  *See id.* at *7 (finding a binding agreement where plaintiff claimed "she d[id] not remember clicking the electronic signature and acceptance of agreement box," because "it [was] undisputed that" she "would not have been able to [proceed] without" doing so); *Dobbs v. Health IQ Ins. Servs., Inc.*, 2022 WL 2974713, at *4 (E.D. Pa. July 27, 2022) (same, even when plaintiff said he had a general practice of not filling out online forms).  The MSA comfortably satisfies this

10

standard.  As detailed above, Microsoft's account creation process requires users to affirmatively click "Next" or "I Agree" after being explicitly informed that doing so means agreeing to the MSA, with hyperlinked access to the complete terms beforehand.  Scari Decl. ¶¶ 3–5.  This constitutes precisely the unambiguous manifestation of assent after conspicuous notice that Pennsylvania law demands and routinely enforces.

### B.    Kesack Accepted the MSA on Her Own and AJK's Behalf.

Kesack accepted the MSA and its binding arbitration agreement on behalf of herself and AJK as a condition precedent to creating the ███████████ Xbox account for AJK's use.  *See* Abbott Decl. ¶¶ 4; 5(a).  As detailed above, in creating the associated Microsoft account, Kesack was required to click "Next," indicating that she "agree[d] to the Microsoft Services Agreement." Scari Decl. ¶¶ 3–5.  The term "Microsoft Services Agreement," situated directly above the "Next" button, appeared in distinct-colored font and contained a hyperlink that, if clicked, would have taken Kesack to the full text of the MSA.  *Id.*  This language and hyperlink provided reasonable notice and an opportunity to review the MSA terms before proceeding.  Under Pennsylvania law, these clicks of "I accept" independently constitute objective manifestations of assent to the MSA. *See Hine*, 2023 WL 8113234, at *6.

In accepting the MSA, Kesack also exercised her power to bind AJK.  The then-operative 2019 MSA states that when the parent of a minor creates a Microsoft account, the parent and the minor "accept and agree to be bound by these Terms[.]"  Scari Decl. Ex. G ¶ 4(a)(iii).  It also states that "use of the Services" or "continuing to use the Services after being notified of a change to [the MSA's] terms" constitutes acceptance of the MSA.  *Id.* at 1.  Thus, AJK is bound by Kesack's acceptance during account creation as well as AJK's confirmed use of the account.

11

### C.      AJK Accepted the MSA Through Continued Use Following Notice.

AJK also agreed to the MSA by continuing to use the ▮▮▮▮▮▮▮▮▮▮ account following notice of the MSA's terms.  Courts construe ongoing use as a manifestation of assent where the applicable terms "are reasonably conspicuous" such that "the user can be fairly charged with 'constructive notice' that continued use will constitute acceptance of the agreement." *HealthplanCRM, LLC v. AvMed, Inc.*, 458 F. Supp. 3d 308, 331 (W.D. Pa. 2020) (quoting *James v. Glob. TelLink Corp.*, 852 F.3d 262, 267 (3d Cir. 2017)).

The Amended Complaint alleges that AJK has played games on Xbox for nearly a decade and continues to do so.  *See* Am. Compl. ¶¶ 9, 13–14.  Plaintiff identified one account used by AJK, and AJK's use of that account is substantiated by recent activity, including in some of the alleged games.  *See* Tulante Decl. ¶ 8; Abbott Decl. ¶ 5(a).  Critically, AJK has continued using Xbox services even after Microsoft sent multiple notifications of updates to the MSA through email and interrupt notices, and even after the filing of this lawsuit.  *See* Abbott Decl. ¶ 5(a); Scari Decl. ¶¶ 7–10, Exs. H–J.

AJK's ongoing use following notice of the MSA's terms manifested AJK's assent to the MSA, including its arbitration clause.  *See Ackies v. Scopely, Inc.*, 2022 WL 214541, at *5 (D.N.J. Jan. 25, 2022) (concluding that plaintiff assented to terms of mobile game by continuing to play after being presented with the terms); *Doe v. Samsung Elecs. Am., Inc.*, 2025 WL 1970245, at *3 (E.D. Pa. July 16, 2025) (holding that continued use after notice of arbitration agreement constituted assent); *Saeedy*, 757 F. Supp. 3d at 1199–202 (finding assent based on plaintiffs' continued use of Microsoft accounts following email and interrupt notices of MSA updates, even where plaintiffs did not remember those notices); *Battle*, 2024 WL 4555687, at *6 (finding assent where plaintiff continued to use Microsoft account following MSA update notices).

**D.** **Estoppel Independently Binds AJK to the Arbitration Agreement.**

Even if AJK were not bound by direct assent, AJK cannot enjoy nearly a decade of benefits under the MSA while also simultaneously trying to disavow the obligations that it imposes. AJK has allegedly used the Services under the MSA continuously since 2018 and, as shown above, has continued to do so even after filing this lawsuit, yet now seeks to repudiate the arbitration clause that is at the core of that agreement. The Third Circuit has long held that equity precludes non-signatories from engaging in this sort of selective enforcement. *See E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates*, 269 F.3d 187, 200 (3d Cir. 2001) (explaining that courts apply estoppel to "prevent a non-signatory from embracing a contract, and then turning its back on the portions of the contract, such as an arbitration clause, that it finds distasteful"). To do otherwise "would both disregard equity and contravene the purposes underlying enactment of the Arbitration Act." *Id.* (alteration in original) (quotation omitted). Thus, a non-signatory may be bound by an arbitration provision they seek to avoid where the non-signatory otherwise "embraces the agreement," including "by knowingly seeking and obtaining direct benefits from that contract." *Griswold v. Coventry First LLC*, 762 F.3d 264, 272 (3d Cir. 2014) (quotations omitted).

This theory of equitable estoppel is consistent with Pennsylvania law, and the Pennsylvania Superior Court has applied it. *See id.* at 271, 272 n.6; *Washburn v. N. Health Facilities, Inc.*, 121 A.3d 1008, 1015 (Pa. Super. Ct. 2015); *see also Santiago v. Philly Trampoline Park, LLC*, 343 A.3d 995, 1004 (Pa. 2025) (acknowledging equitable estoppel as applied in *Bouriez v. Carnegie Mellon Univ.*, 359 F.3d 292, 294 (3d Cir. 2004)). Moreover, this rule applies equally to minors. *See Frank v. Volkswagenwerk, A.G. of West Germany*, 522 F.2d 321, 329 (3d Cir. 1975) ("Pennsylvania courts would not allow a minor to disavow a release where she had received the benefits therefrom.").

13

Courts have acknowledged that continued use of services governed by a clickwrap agreement constitutes a "direct benefit" justifying the application of equitable estoppel. *See HealthplanCRM*, 458 F. Supp. 3d at 329. This Court should do the same here. It is undisputed that, despite purporting to repudiate the arbitration agreement, AJK continues to directly benefit by accessing services governed by the MSA, even after receiving notice of the MSA via MSA update notifications and even after Plaintiff filed this suit. Here, where AJK has "embraced the [MSA] and directly benefits from it," equity demands that AJK be bound to its arbitration clause. *Griswold*, 762 F.3d at 272.

**E.**     **AJK is Bound to the MSA's Terms as a Third-Party Beneficiary.**

AJK is further bound as a third-party beneficiary of Kesack's agreement. Under Pennsylvania law, "a party is an intended third-party beneficiary if both parties to the contract express an intention to benefit the third party in the contract itself," or if "recognition of a right to performance in the beneficiary is appropriate to effectuate the intentions of the parties" and "the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance." *Reibstein v. CEDU/Rocky Mountain Acad.*, 2000 WL 1858718, at \*7 (E.D. Pa. Dec. 19, 2000) (quotation omitted). The question thus depends entirely on the intent of the parties. *See id.* In *Reibstein*, for example, where parents sued a private school on behalf of their minor son, the court found that the son was bound by the agreement to arbitrate contained in the contract signed by his mother "for the purpose of helping her troubled son" be admitted to the school. *Id.* at \*8 (emphasizing that the son "was not only the intended beneficiary of the [contract], but he was part of [it] from its very inception").

Similarly, when Kesack originally created the ████████████ account, and insofar as she created any other account used by AJK, she agreed to the MSA specifically for AJK to use and

14

access the services afforded by that agreement, the terms of which expressly contemplated that a minor such as AJK might be the beneficiary of a parent's account creation. *See* Scari Decl. Ex. A §§ 14(a)(v) ("Kids and Xbox"), (c) ("Microsoft Family Features"). The agreement between Kesack and Microsoft was clearly intended to benefit AJK, and AJK has continued to benefit for nearly a decade. AJK is therefore a third-party beneficiary under the MSA and is bound by its arbitration clause. *See Angelilli v. Activision Blizzard, Inc.*, 2025 WL 524276, at \*12 (N.D. Ill. Feb. 18, 2025) (finding minor was third-party beneficiary of gaming account created for the minor's use and therefore bound to arbitrate under governing terms).

**F.     Plaintiff's Claims Fall Within the Arbitration Agreement's Broad Scope.**

The claims against Microsoft and Mojang fall squarely within the arbitration agreement, which broadly encompasses "any claim or controversy between you and us concerning the Services, . . . marketing, . . . your purchase transaction, . . . or these Terms, under any legal theory including contract, warranty, tort, statute, or regulation," where "us" is defined to include "Microsoft and Microsoft's affiliates." Scari Decl. Ex. A § 15(a). Courts construe the scope of such agreements liberally. *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 627 (1985). The agreement must be enforced "unless it may be said with positive assurance that [it] is not susceptible of an interpretation that covers the asserted dispute." *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986). In other words, absent an "express provision excluding a particular grievance from arbitration . . . only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail." *Id.* (citation omitted). No such provision or evidence exists here. Rather, these are precisely the type of claims Kesack and AJK agreed to arbitrate.

15

\*                \*                \*

Whether as a direct party through account creation or continued use, under principles of equitable estoppel, or as a third-party beneficiary, Kesack and AJK are bound by the MSA's arbitration clause.  The Court should direct them to present their claims to an arbitrator, and stay those claims under the FAA pending that arbitration.[4]  Under these circumstances, allowing this case to proceed in federal court would offend Pennsylvania contract law, federal arbitration policy, and the consistent rulings of courts nationwide that have compelled arbitration in substantially identical gaming disputes involving minors.

In the alternative, should the Court deny this motion, Microsoft and Mojang respectfully request that the Court allow them to file a forum non conveniens motion, which it submits is a separate and independent basis for dismissal here based on the MSA's mandatory forum-selection clause.  This clause directs all disputes arising under the MSA that are heard judicially, and not in arbitration, to the "exclusive jurisdiction and venue of the state or federal courts in King County, Washington."  Scari Decl. Exs. A–C § 11.  Pennsylvania courts enforce such language where, as here, the clause is not unreasonable.  *See Autochoice Unlimited, Inc. v. Avagard Auto Finance, Inc.*,

---

[4]     In *Santiago v. Philly Trampoline Park, LLC*, the Pennsylvania Supreme Court held that parents cannot bind their minor children to an arbitration agreement.  343 A.3d 995, 1015 (Pa. 2025).  *Santiago*, however, expressly acknowledged that non-signatories may be bound by equitable estoppel and third-party beneficiary theories, which were "not advanced" in that case.  *See id.* at 1009.  In any case, even if *Santiago* applied, it violates the Fourteenth Amendment parental rights recognized in *Troxel v. Granville*, 530 U.S. 57 (2000)—numerous other state courts have held that parents can bind children to arbitration clauses when making decisions about their children's activities, including recreational activities, *see Global Travel Marketing, Inc. v. Shea*, 908 So. 2d 392, 404 (Fla. 2005) (parents have constitutional authority to "elect on their children's behalf to agree in advance to arbitrate a resulting tort claim" from chosen activities)—and contravenes *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 341 (2011), which preempts state laws that "prohibit[] outright the arbitration of a particular type of claim."  *Santiago*'s framing of arbitration as "invariably a less favorable forum than a court of common pleas" constitutes precisely the type of categorical ban on arbitration that *Concepcion* displaces with federal arbitration policy.  *See Santiago*, 343 A.3d at 1016 (Brobson, J., dissenting in part).

16

9 A.3d 1207, 1215–16 (Pa. 2010) (citation omitted); *Frutera Agrosan Export SPA v. MSC Mediterranean Shipping Co., S.A.*, 727 F. Supp. 3d 526, 531 (E.D. Pa. 2024).

## CONCLUSION

For the foregoing reasons, Microsoft and Mojang respectfully request that the Court grant their Motion, compel all claims against them to binding arbitration, and stay this action pending the conclusion of that arbitration.

DATED: March 6, 2026

 Respectfully submitted,

*/s/ Sozi Pedro Tulante*
Sozi Pedro Tulante (PA ID 202579)
Julia Chapman (PA ID 315959)
Dechert LLP
Cira Centre, 2929 Arch Street
Philadelphia, PA 19104-2808
Telephone: 215-994-2090
sozi.tulante@dechert.com
julia.chapman@dechert.com

*Attorneys for Defendants Microsoft Corporation and Mojang AB*

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 6th day of March, 2026, a copy of the foregoing document was served upon all counsel of record via the Court's electronic filing system.

*/s/ Sozi Pedro Tulante*
Sozi Pedro Tulante