**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| ANGIE KESACK, as Parent and Natural Guardian of AJK, a minor,<br><br>        Plaintiff,<br><br>v.<br><br>ROBLOX CORPORATION, EPIC GAMES, INC., MICROSOFT CORPORATION, and MOJANG AB,<br><br>        Defendants. | Case No. 2:25-cv-06607-MRP |

**<u>DEFENDANT EPIC GAMES, INC.'S MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF ITS MOTION TO COMPEL ARBITRATION AND
TO STAY OR, IN THE ALTERNATIVE, TO TRANSFER VENUE</u>**

TABLE OF CONTENTS

Page

INTRODUCTION ....................................................................................................................1

BACKGROUND ....................................................................................................................4

ARGUMENT ........................................................................................................................9

I.    PLAINTIFF'S CLAIMS SHOULD BE COMPELLED TO
      ARBITRATION. ...........................................................................................................9

      A.    By Agreeing to the EULA and TOS, A.J.K. and Epic Agreed to
            Arbitrate All Disputes Relating to A.J.K.'s Alleged Playing
            *Fortnite.* ...........................................................................................................9

            1.    The EULA and TOS Conspicuously Provide for Arbitration.
                  ...................................................................................................................9

            2.    A.J.K. Agreed to Arbitrate Their Claims Against Epic Ten
                  Times.......................................................................................................10

            3.    Even if Angie Kesack Agreed to the EULA and TOS on
                  A.J.K.'s Behalf, A.J.K. Is Still Bound to Arbitrate................................12

      B.    The EULA and TOS Delegate Threshold Issues of Arbitrability to
            the Arbitrator.........................................................................................................14

      C.    A.J.K. Cannot Disaffirm the Contract. ................................................................16

      D.    The Court Should Stay These Proceedings Pending Arbitration.........................16

II.   ALTERNATIVELY, THE CASE AGAINST EPIC SHOULD BE
      TRANSFERRED. ..........................................................................................................17

      A.    The Mandatory Forum Selection Clause in the EULA and TOS
            Requires All Disputes in Court Be Heard in North Carolina..............................17

      B.    The Other Section 1404(a) Factors Favor Transfer. ...........................................19

CONCLUSION....................................................................................................................20

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*A.C. ex. rel .Carbajal v. Nintendo of Am. Inc.*,
  2021 WL 1840835 (W.D. Wash. Apr. 29, 2021) ................................................................... 15

*Aetna Cas. & Sur Co. v. Duncan*,
  972 F.2d 523 (3d Cir. 1992) ..................................................................................... 3, 11

*Angelilli v. Activision Blizzard, Inc.*,
  2025 WL 524276 (N.D. Ill. Feb. 18, 2025) ...................................................................... 1, 2, 16

*Antonetti v. Activision Blizzard, Inc.*,
  764 F. Supp. 3d 1309 (N.D. Ga. 2025) ........................................................................... 1, 12

*Arthur Andersen LLP v. Carlisle*,
  556 U.S. 624 (2009) ...................................................................................................... 3

*AT&T Mobility LLC v. Concepcion*,
  563 U.S. 333 (2011) ..................................................................................................... 14

*AT&T Techs., Inc. v. Commc'ns Workers of Am.*,
  475 U.S. 643 (1986) ...................................................................................................... 8

*Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*,
  571 U.S. 49 (2013) ................................................................................................. 17, 19

*Bouriez v. Carnegie Mellon Univ.*,
  359 F.3d 292 (3d Cir. 2004) ......................................................................................... 12

*Budtel Assocs., LP v. Cont'l Cas. Co.*,
  915 A.2d 640 (2006) ...................................................................................................... 2

*C.M.D. ex rel. De Young v. Facebook, Inc.*,
  621 F. App'x 488 (9th Cir. 2015) ................................................................................... 16

*Carnival Cruise Lines, Inc. v. Shute*,
  499 U.S. 585 (1991) ..................................................................................................... 18

*Carter v. TD Ameritrade Holding Corp.*,
  218 N.C. App. 222 (2012) ............................................................................................ 12

*Cent. Contracting Co. v. Maryland Cas. Co.*,
  367 F.2d 341 (3d Cir. 1996) ......................................................................................... 19

*Century Indem. Co. v. Certain Underwriters at Lloyd's, London*,
  584 F.3d 513 (3d Cir. 2009) ........................................................................................... 8

*Chamberlain v. Giampapa*,
  210 F.3d 154 (3d Cir. 2000) ......................................................................................... 14

*Chandler v. Jones*,
  90 S.E. 580 (N.C. 1916) ........................................................................................... 3, 11

*Coulter v. Experian Info. Sols., Inc.*,
  2021 WL 735726 (E.D. Pa. Feb. 25, 2021) ................................................................. 9, 15

*Courtright v. Epic Games, Inc.*,
  766 F. Supp. 3d 873 (W.D. Mo. 2025) ........................................................ 2, 12, 13, 16

*Dean Witter Reynolds, Inc. v. Byrd*,
  470 U.S. 213 (1985) ............................................................................................................ 8

*Devine v. Bethesda Softworks, LLC*,
  636 F. Supp. 3d 564 (D. Md. 2022) ................................................................................ 15

*Dobbs v. Health IQ Ins. Servs., Inc.*,
  2022 WL 2974713 (E.D. Pa. July 27, 2022) ................................................................. 10

*Doe v. Epic Games, Inc.*,
  435 F. Supp. 3d 1024 (N.D. Cal. 2020) ......................................................................... 16

*Dunn v. Activision Blizzard, Inc.*,
  749 F. Supp. 3d 976 (E.D. Ark. 2024) ................................................................. 1, 12, 13

*Eichlin v. GHK Co.*,
  746 F. Supp. 3d 247 (E.D. Pa. 2024) ............................................................................. 15

*Feldman v. Google, Inc.*,
  513 F. Supp. 2d 229 (E.D. Pa. 2007) ................................................................. 10, 17, 19

*First Options of Chicago, Inc. v. Kaplan*,
  514 U.S. 938 (1995) ............................................................................................................ 9

*Fisher v. Taylor Motor Co.*,
  249 N.C. 617 (1959) ........................................................................................................... 3

*Fluke v. Cashcall, Inc.*,
  2009 WL 1437593 (E.D. Pa. May 21, 2009) ................................................................. 11

*Frank Spangler Co. v. Haupt*,
  53 Pa. Super. 545 (1913) ............................................................................................. 3, 16

*Frutera Agrosan Exp. SPA v. MSC Mediterranean Shipping Co., S.A.*,
  727 F. Supp. 3d 526 (E.D. Pa. 2024) ............................................................................. 19

*Glover v. Junior*,
  333 A.3d 323 (Pa. 2025) ............................................................................................... 9, 10

*Hardin v. York Mem. Park*,
  221 N.C. App. 317 (2012) ............................................................................................... 13

*Heidbreder v. Epic Games, Inc.*,
  438 F. Supp. 3d 591 (E.D.N.C. 2020) ........................................................................... 13

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
  586 U.S. 63 (2019) .............................................................................................................. 3

*Howsam v. Dean Witter Reynolds, Inc.*,
  537 U.S. 79 (2002) .............................................................................................................. 8

*In re StockX Customer Data Sec. Breach Litig.*,
  19 F.4th 873 (6th Cir. 2021) ...................................................................................... 15

*Ingram v. Neutron Holdings, Inc.*,
  467 F. Supp. 3d 575 (M.D. Tenn. 2020) ................................................................... 15

*K.F.C. v. Snap Inc.*,
  29 F.4th 835 (7th Cir. 2022) ...................................................................................... 15

*Kilduff v. Jayco*,
  2023 WL 3361187 (E.D. Pa. May 10, 2023) ...................................................... 18, 19

*Kindred Nursing Ctrs. Ltd. P'ship. v. Clark*,
  581 U.S. 246 (2017) .................................................................................................. 14

*Kuznik v. Hooters of Am., LLC*,
  2020 WL 5983879 (C.D. Ill. Oct. 8, 2020) ............................................................... 15

*Lester v. Gene Exp., Inc.*,
  2009 WL 3757155 (D.N.J. Nov. 10, 2009) ............................................................... 18

*Lewis v. Lester*,
  235 N.C. App. 84 (N.C. Ct. App. 2014) ...................................................................... 9

*Lewis v. Nat'l Bd. of Osteopathic Med. Examiners, Inc.*,
  2020 WL 7260747 (E.D. Pa. Dec. 10, 2020) ............................................................ 18

*Mathias v. Caterpillar, Inc.*,
  203 F. Supp. 3d 570 (E.D. Pa. 2016) ........................................................................... 4

*Matthews v. Gucci*,
  2022 WL 462406 (E.D. Pa. Feb. 15, 2022) ............................................................... 11

*N.A. v. Nintendo of Am. Inc.*,
  2023 WL 8587628 (N.D. Cal. Dec. 11, 2023) ....................................................... 3, 15

*Nemo Assoc., Inc. v. Homeowners Mkt. Servs. Int'l, Inc.*,
  942 F. Supp. 1025 (E.D. Pa. 1996) ........................................................................... 18

*Olde Homestead Golf Club v. Electronic Transaction Sys. Corp.*,
  714 F. App'x 186 (3d Cir. 2017) ................................................................................ 17

*Orellana v. Roblox Corp.*,
  769 F. Supp. 3d 1273 (M.D. Fla. 2025) ................................................................ 2, 12

*Pricharda v. Checkr, Inc.*,
  2022 WL 16749033 (E.D. Pa. Nov. 7, 2022) ..................................................... 2, 10, 11

*Pro. Sports Tickets & Tours, Inc. v. Bridgeview Bank Grp.*,
  2001 WL 1090148 (E.D. Pa. Sept. 13, 2001) .............................................................. 8

*Rent-A-Ctr., W., Inc. v. Jackson*,
  561 U.S. 63 (2010) ....................................................................................................... 9

*Ricoh Co., Ltd. v. Honeywell, Inc.*,
  817 F. Supp. 473 (D.N.J. 1993) ................................................................................. 20

*S.T.G. ex rel. Garcia v. Epic Games, Inc.*,
   752 F. Supp. 3d 1200 (S.D. Cal. 2024) ............................................................... 15

*Sahara Sam's Oasis, LLC v. Adams Cos.*,
   2010 WL 3199886 (D.N.J. Aug. 12, 2010) .......................................................... 18

*Santiago v. Philly Trampoline Park, LLC*,
   343 A.3d 995 (Pa. 2025) ............................................................................... 14, 15

*Scottsdale Ins. Co. v. Kinsale Ins. Co.*,
   253 F. Supp. 3d (E.D. Pa. 2017) ......................................................................... 12

*Singh v. Uber Techs., Inc.*,
   939 F.3d 210 (3d Cir. 2019) ................................................................................. 3

*Smay v. E.R. Stuebner, Inc.*,
   864 A.2d 1266 (Pa. Super. 2004) ........................................................................ 13

*Smith v. Spizzirri*,
   601 U.S. 472 (2024) ............................................................................................. 17

*Stanley v. Columbia Sussex Mgmt., LLC*,
   2018 WL 2994642 (E.D. Pa. June 14, 2018) ...................................................... 20

*Stephenson v. AT&T Servs., Inc.*,
   2021 WL 3603322 (E.D. Pa. Aug. 13, 2021) ...................................................... 11

*Stephenson v. Nat'l R.R. Passenger Corp.*,
   2012 WL 4932043 (E.D. Pa. Oct. 17, 2012) ....................................................... 20

*Wright v. Hepler*,
   194 N.C. 542 (1927) ............................................................................................ 16

**Statutes**

28 U.S.C. § 1404(a) ...................................................................................... 4, 17, 19

**Rules**

Pa.R.C.P. 2026-2049 ............................................................................................. 14

**Other Authorities**

5 Williston on Contracts § 9:9 (4th ed. 2023) ...................................................... 11

**INTRODUCTION**

In the First Amended Complaint ("FAC"), Plaintiff Angie Kesack alleges that her 12-year-old child A.J.K. is addicted to *Fortnite*, a video game developed by Defendant Epic Games, Inc. ("Epic"). Before ever playing *Fortnite*, A.J.K. was required to agree to the *Fortnite* End User License Agreement ("EULA"), in which they agreed to arbitrate any dispute that "relates to [A.J.K.'s] use or attempted use of Epic's products or services and Epic's products and services generally[.]"[1] A.J.K. subsequently agreed to Epic's Terms of Service ("TOS"), which includes arbitration terms substantially similar to the EULA. In both the EULA and TOS, A.J.K. and Epic further agreed that "the validity, enforceability, or scope of [the] Binding Individual Arbitration section" are delegated to the arbitrator. This Court should enforce the parties' agreement, compel Plaintiff's claims to arbitration, and stay this action as to Epic.[2]

This is not the first case alleging addiction to video games. Every court to have ruled on these cases has found the plaintiffs, like Plaintiff here, agreed to arbitrate their claims. Those courts considered and rejected arguments asserting lack of capacity, disaffirmance, and unconscionability. *See Dunn v. Activision Blizzard, Inc.*, 749 F. Supp. 3d 976 (E.D. Ark. 2024); *Ayers v. Epic Games, Inc.*, 1:24-cv-00064-AW (N.D. Fla. Jan. 27, 2025) (Dkt. 162); *Antonetti v. Activision Blizzard, Inc.*, 764 F. Supp. 3d 1309 (N.D. Ga. 2025); *Angelilli v. Activision Blizzard, Inc.*, 2025 WL 524276, at *15 (N.D. Ill. Feb. 18, 2025); *Johnson v. Activision Blizzard, Inc.*, 3:24-

---

[1] Decl. of Joshua D. Shaw in Supp. of Epic's Mot. to Compel Arbitration ("Shaw Decl.") Ex. 12 (EULA) § 12.3.1. From *Fortnite*'s launch until November 27, 2025, Epic required all players to agree to the EULA before playing the game. (*Id*. ¶ 32.) Effective November 28, 2025, Epic has required all players to affirmatively agree to a revised version of Epic's TOS. (*Id.*; Ex. 13.) Because A.J.K.'s claims relate to their alleged *Fortnite* gameplay, the EULA's and TOS's arbitration provisions cover the asserted claims. (*See* FAC ¶ 14 (ECF 47).)

[2] A.J.K.'s mother, Angie Kesack, is the plaintiff in this action but asserts claims only on A.J.K.'s behalf. (FAC ¶ 12.) Accordingly, should the Court conclude that A.J.K. agreed to arbitrate their claims against Epic, Plaintiff's claims must be brought in arbitration.

CV-00026-JM (E.D. Ark. Mar. 3, 2025) (Dkt. 142); *Orellana v. Roblox Corp.*, 769 F. Supp. 3d 1273 , 1289-90 (M.D. Fla. 2025); *Courtright v. Epic Games, Inc.*, 766 F. Supp. 3d 873, 890 (W.D. Mo. 2025). Epic respectfully requests that this Court follow the reasoned decisions in those parallel cases and compel arbitration for the following reasons.

*First*, A.J.K. agreed to arbitrate their claims against Epic ten times. When the A.J.K. Accounts were created, Epic presented A.J.K. with the EULA and required them to press an "accept" button before they could play *Fortnite*. A.J.K. first agreed to the EULA on May 26, 2019, before ever playing the game. A.J.K. agreed to the EULA eight more times, most recently on December 21, 2024.  A.J.K. agreed to the TOS on December 25, 2025. A.J.K. must arbitrate all claims against Epic. *See Pricharda v. Checkr, Inc.*, 2022 WL 16749033, at *3 (E.D. Pa. Nov. 7, 2022) ("Courts in this district have regularly held that clickwrap agreements manifest sufficient agreement to the terms in the contract." (internal quotations omitted) (collecting authorities).[3]

*Second*, insofar as A.J.K. disputes that the claims are covered by the arbitration clause, those arguments must be presented to the arbitrator. The parties agreed that an arbitrator would decide any dispute over the validity, enforceability, and scope of the arbitration agreement. (EULA § 12.3.1; TOS § 17.) *See Angelilli*, 2025 WL 524276, at *15 (explaining that the Court "cannot consider" whether the minor "lacked capacity to accept the Epic EULA" because "the Epic EULA contains a delegation clause"). When threshold questions of arbitrability are delegated to the arbitrator, as here, the court "possesses no power to decide the arbitrability issue . . . even if the court thinks that the argument that the arbitration agreement applies to a particular dispute is

---

[3] The EULA and TOS are governed by North Carolina law. (EULA § 11; TOS § 16.) Because North Carolina and Pennsylvania law are consistent on the relevant issues, this motion includes citations to authority from both jurisdictions where relevant. *See Budtel Assocs., LP v. Cont'l Cas. Co.*, 915 A.2d 640, 643 (2006) (explaining that when "no conflict exists" between the laws of two different states, "further analysis is unnecessary").

wholly groundless." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 68 (2019); *Singh v. Uber Techs., Inc.*, 939 F.3d 210, 228 (3d Cir. 2019) (holding that "where the FAA is held to apply" and the contract includes a valid delegation clause, "all other questions must be reserved for an arbitrator"). Even if A.J.K. contends that they disaffirmed their agreements to the EULA and TOS, both North Carolina and Pennsylvania law are in accord that "the issue of disaffirmation does not relate to contract formation; rather, it goes to whether the [EULA] is enforceable, an issue that the parties delegated to an arbitrator." *N.A. v. Nintendo of Am. Inc.*, 2023 WL 8587628, at \*4 (N.D. Cal. Dec. 11, 2023); *Aetna Cas. & Sur Co. v. Duncan*, 972 F.2d 523, 526 (3d Cir. 1992) ("Pennsylvania follows the general Restatement rule" that "[c]ontracts of a minor, other than contracts for necessities, are voidable by the minor, not void"); *Chandler v. Jones*, 90 S.E. 580, 581 (N.C. 1916) ("contract of an infant is voidable and not void").

*Third*, A.J.K.'s purported disaffirmation is ineffective. A.J.K. cannot disaffirm the EULA while continuing to retain its benefits. A.J.K. alleges that they continue to play *Fortnite*. (FAC ¶ 273.) Epic's records show that A.J.K. accepted the TOS and continued to play *Fortnite* after purportedly disaffirming the EULA in the Complaint filed on November 21, 2025. (Shaw Decl. ¶¶ 68-70.) A.J.K. has retained the EULA's benefits (continued access to *Fortnite*) and affirmed the EULA. *Frank Spangler Co. v. Haupt*, 53 Pa. Super. 545, 546 (1913) ("An infant cannot disaffirm a contract and at the same time retain what he has received under it."); *Fisher v. Taylor Motor Co.*, 249 N.C. 617, 620 (1959) (similar). A.J.K.'s subsequent acceptance of the TOS and retention of the benefits of the agreement extinguished any purported disaffirmation.

*Fourth*, because A.J.K.'s claims are arbitrable, Section 3 of the Federal Arbitration Act ("FAA") requires the Court to stay their claims against Epic pending completion of the arbitration. *See Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 627 (2009).

Alternatively, transfer to the Eastern District of North Carolina is warranted pursuant to 28 U.S.C. § 1404(a). The EULA and TOS contain forum selection clauses providing that, for any disputes not subject to arbitration, A.J.K. and Epic agree to "the exclusive jurisdiction of the Superior Court of Wake County, North Carolina, or, if federal court jurisdiction exists, the United States District Court for the Eastern District of North Carolina." (EULA § 11; TOS § 16.) A motion to enforce a forum selection clause should only be denied under "extraordinary circumstances unrelated to the convenience of the parties." *Mathias v. Caterpillar, Inc.*, 203 F. Supp. 3d 570, 576-77 (E.D. Pa. 2016) (internal quotation omitted). No such extraordinary circumstances exist here. Epic is headquartered in North Carolina; many of its key witnesses reside there, and because the EULA and TOS contain a North Carolina choice-of-law provision, the courts in North Carolina will be the most familiar with the law governing this dispute. (Shaw Decl. ¶¶ 2, 46-47.)

The chosen venue is wrong for multiple reasons. The claims against Epic must be compelled to arbitration, or, in the alternative, transferred to the Eastern District of North Carolina.

## BACKGROUND

From *Fortnite*'s release in the summer of 2017 until November 27, 2025, all players were required to affirmatively agree to the EULA, including its arbitration agreement, before they could begin playing the game. (Shaw Decl. ¶ 32.) Effective November 28, 2025, all players have been required to agree to a revised version of Epic's TOS which includes terms related to the player's use of *Fortnite*, including an arbitration agreement. (*Id.*) The player may scroll through the text of the agreement, which is displayed on-screen, and must either accept the EULA or TOS by pressing an "accept" button or reject the EULA by pressing a "decline" button. (*Id.* ¶¶ 32-34.)

From time to time, Epic updated the EULA. (*Id.* ¶ 39.) Epic advises players that it may update the EULA at any time: "Epic may issue an amended Agreement . . . at any time in its

discretion by posting the amended Agreement . . . on its website or by providing you with digital access to amended versions . . . when you next access the Software." (EULA § 14.) The EULA further advises that "[i]f any amendment to this Agreement . . . is not acceptable to you, you may terminate this Agreement and must stop using the Software." (*Id.*)

From March 2019 until it was replaced by the TOS, the EULA included an arbitration agreement. (Shaw Decl. ¶ 36.) Section 12.3.1 of the EULA provides:

> You and Epic agree to submit all Disputes between You and Epic to individual binding arbitration. "Dispute" means any dispute, claim, or controversy (except those specifically exempted below) between You and Epic that relates to your use or attempted use of Epic's products or services and Epic's products and services generally, *including without limitation the validity, enforceability, or scope of this Binding Individual Arbitration section.*
>
> You and Epic agree to arbitrate all Disputes regardless of whether the Dispute is based in contract, statute, regulation, ordinance, tort (including fraud, misrepresentation, fraudulent inducement, or negligence), or any other legal or equitable theory.

(EULA § 12.3.1, emphasis added.) The same section also expressly states that "whether a dispute is subject to arbitration under [the EULA] will be determined by the arbitrator rather than a court." (*Id.*) The EULA also includes a provision providing that players may opt out of the arbitration agreement by submitting a written notice to Epic postmarked within 30 days of the date on which they first accepted the EULA. (*Id.* § 12.6.) For an opt out to be effective, players "must include [their] name, mailing address, and account name [they] use while playing Fortnite." (*Id.*)

Epic's TOS, effective November 28, 2025, includes a substantially similar arbitration agreement. Section 17 of the TOS provides:

> The informal resolution and Binding Individual Arbitration requirements in this Section apply to all Disputes between you and Epic. "Dispute" means any dispute, claim, or controversy (excluding those exceptions listed below), whether based in contract, tort, statute, fraud, misrepresentation, or any other legal theory, that relates to any Licensed Product or the Licensed Products

> generally, your use or attempted use of a Licensed Product, or these Terms, including the validity, enforceability, or scope of this agreement to arbitrate or any portion of it. In Disputes involving minors, Disputes asserted both by the minor(s) and/or by the minor's or minors' parent(s) or guardian(s) are subject to this agreement to arbitrate, and the use of "you" in this Section means both the Adult and the minor(s).

(TOS § 17(b).)[4]

Additionally, the EULA and TOS both include a mandatory forum selection clause requiring that disputes not subject to arbitration be brought in North Carolina. (Shaw Decl. ¶¶ 46-47.) Section 11 of the EULA provides:

> For any Disputes deemed not subject to binding individual arbitration, as provided in the section immediately below, you and Epic agree to submit to the exclusive jurisdiction of the Superior Court of Wake County, North Carolina, or, if federal court jurisdiction exists, the United States District Court for the Eastern District of North Carolina. You and Epic agree to waive any jurisdictional, venue, or inconvenient forum objections to such courts (without affecting either party's rights to remove a case to federal court if permissible), as well as any right to a jury trial.

(EULA § 11; *see also* TOS § 16.)

Plaintiff's counsel provided Epic's counsel with the gamertags "███████," "███████," and "███████████" and email address "███████████████" for the accounts that A.J.K. uses to play *Fortnite*. (Rickert Decl. Ex. A.) Epic identified three accounts based on this information (the "A.J.K. Accounts").

A.J.K. Account #1. The first account uses the in-game display name "████████" and was created on November 1, 2019 on a PlayStation console ("A.J.K. Account #1"). (Shaw Decl. ¶ 52.) The user input their name as "Angie Kesack" and their email address as

---

[4] Players may opt of out the TOS's arbitration agreement by submitting a written notice within thirty days of signing up for Fortnite "for the first time." (TOS § 17(a).) To be effective, players must provide, among other things, their "full name, Epic Games Account, and email address" and "a clear statement that the End User wants to opt out of the Binding Individual Arbitration." (*Id.*)

"███████████████." (*Id.*) The user also chose a password for the account. (*Id.* ¶¶ 8-9). When prompted to input their date of birth on June 23, 2022, the user input a birthdate indicating that they were born in September 2013. (*Id.* ¶ 52.)

At the time of the account's creation, the user of A.J.K. Account #1 affirmatively agreed to the EULA by clicking the "accept" button in the manner described above. (*Id.* ¶ 56.) Thereafter, they also agreed to the EULA, including its arbitration provision, on November 18, 2023, March 31, 2024, October 15, 2024, October 19, 2024, December 18, 2024, and December 21, 2024. (*Id.* ¶¶ 58, 60, 62, 64, 66, 74.) The user of A.J.K. Account #1 accepted Epic's TOS on December 25, 2025. (*Id.* ¶ 68.)

A.J.K. Account #2. The second account uses the in-game display name "████████" and was created on June 6, 2022 on a PlayStation console ("A.J.K. Account #2"). (*Id.* ¶ 52) The user input their name as "Angie Kesack" and their email address as "angiekesack79@gmail.com." (*Id.*) The user also chose a password for the account. (*Id.* ¶¶ 8-9). Epic's records do not include the player's date of birth, which means that, when the player was asked for their birthdate, the player input a date that would make them currently 18 years old or older. (*Id.* ¶ 52.) The user of A.J.K. Account #2 agreed to the EULA, including its arbitration provision, on March 5, 2023 and October 15, 2024. (*Id.* ¶¶ 72, 74)

A.J.K. Account #3. The third account was created on May 26, 2019 on a PlayStation console ("A.J.K. Account #3"). (*Id.* ¶ 52.) The user chose a password for the account. (*Id.* ¶¶ 8-9). Epic's records do not include the player's date of birth, which means that, when the player was asked for their birthdate, the player input a date that would make them currently 18 years old or older. (*Id.* ¶ 52.) At the time of the account's creation, the user of A.J.K. Account #3 affirmatively agreed to the EULA by clicking the "accept" button in the manner described above. (*Id.* ¶ 77.)

A.J.K. Account #3 was created at the same Internet Protocol ("IP") address using the same device identification as A.J.K. Accounts #1 and #2, strongly suggesting that it and A.J.K. Accounts #1 and #2 belong to the same user. (*Id.* ¶ 52.)

In each instance, the arbitration agreement was prominently called out near the top of the agreement (*Id.* ¶¶ 36-37), and the user was required to accept the agreement by clicking the "accept" button before playing *Fortnite* (*Id.* ¶¶ 32-34). To accept the EULA, the user was required to have logged into the account using their unique display name and password. (*Id.* ¶ 34.)

Epic did not receive an opt-out notification with respect to the A.J.K. Accounts within 30 days of the date on which the user first accepted the EULA or anytime thereafter. (*Id.* ¶ 78.)

## APPLICABLE LAW

The EULA's and TOS's arbitration agreements are "subject to the U.S. Federal Arbitration Act and federal arbitration law," (EULA § 12.3; *see* TOS § 17(e)), and are contracts "involving interstate commerce" governed by the FAA. *Pro. Sports Tickets & Tours, Inc. v. Bridgeview Bank Grp.*, 2001 WL 1090148, at *3 (E.D. Pa. Sept. 13, 2001). Courts are required to "rigorously enforce agreements to arbitrate," *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985), and "doubts concerning the scope of an arbitrable issue should be resolved in favor of arbitration." *Century Indem. Co. v. Certain Underwriters at Lloyd's, London*, 584 F.3d 513, 527 (3d Cir. 2009).

In deciding whether to compel arbitration, the court is limited to whether (1) there is an agreement to arbitrate between the parties; and (2) the agreement covers the dispute at issue. *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002). The court cannot reach the second question when the arbitration agreement "clearly and unmistakably" delegates threshold issues such as the scope, validity, and enforceability of the agreement to the arbitrator. *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986). These threshold questions include

determining the validity of the arbitration agreement itself. *Rent-A-Ctr., W., Inc. v. Jackson*, 561

U.S. 63, 68 (2010). If an agreement includes a delegation clause covering validity, enforceability,

and scope, "this Court's inquiry is limited to the issue of whether a valid arbitration agreement

exists". *Coulter v. Experian Info. Sols., Inc.*, 2021 WL 735726, at \*4 (E.D. Pa. Feb. 25, 2021).

**ARGUMENT**

**I.    PLAINTIFF'S CLAIMS SHOULD BE COMPELLED TO ARBITRATION.**

> **A.    By Agreeing to the EULA and TOS, A.J.K. and Epic Agreed to Arbitrate All Disputes Relating to A.J.K.'s Alleged Playing *Fortnite*.**

To determine whether the parties entered into an arbitration agreement, federal courts apply

"ordinary state-law principles that govern the formation of contracts." *First Options of Chicago,*

*Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). "The essential elements of a valid, enforceable contract

are offer, acceptance, and consideration." *Lewis v. Lester*, 235 N.C. App. 84, 86 n. 1 (N.C. Ct.

App. 2014); *Glover v. Junior*, 333 A.3d 323, 339 (Pa. 2025) (similar). Applying these principles,

a valid arbitration agreement exists between Epic and A.J.K.

**1.    The EULA and TOS Conspicuously Provide for Arbitration.**

The EULA and TOS conspicuously notify players considering whether to agree to them

that they contain a binding arbitration clause. Using straightforward language, the introduction to

the EULA "highlight[s]" three "important terms, policies, and procedures," including that:

> You and Epic agree to resolve disputes between us in individual arbitration (not in court). We believe the alternative dispute-resolution process of arbitration will resolve any dispute fairly and more quickly and efficiently than formal court litigation. Section 12 explains the process in detail. We've put this up front (and in caps) because it's important[.]

(EULA intro.) The notice then reiterates, in bolded, capitalized type:

> **THIS AGREEMENT CONTAINS A BINDING, INDIVIDUAL ARBITRATION    AND    CLASS-ACTION    WAIVER**

- 9 -

**PROVISION. IF YOU ACCEPT THIS AGREEMENT, YOU AND EPIC AGREE TO RESOLVE DISPUTES IN BINDING, INDIVIDUAL ARBITRATION AND GIVE UP THE RIGHT TO GO TO COURT INDIVIDUALLY OR AS PART OF A CLASS ACTION[.]**

(*Id.*) Similarly, the introduction to the TOS provides in bold, italicized font:

> ***By accepting these Terms, you (& your parent/guardian) agree to abide by these rules, including limits on Epic's liability to you, rules for in-game content, arbitration of disputes, and Epic's right to amend these Terms and terminate Epic Games Accounts.***

(TOS intro.) Such prominent displays are sufficient to bind individuals to arbitration. *See Feldman v. Google, Inc.*, 513 F. Supp. 2d 229, 237 (E.D. Pa. 2007) (compelling arbitration when the agreement was "immediately visible to the user, as was a prominent admonition in boldface to read the terms and conditions carefully"); *Pricharda*, 2022 WL 16749033, at *4 (compelling arbitration when plaintiff was alerted "to the presence of the Arbitration Clause in bold and all capital lettering at the very beginning of the Agreement"); *Dobbs v. Health IQ Ins. Servs., Inc.*, 2022 WL 2974713, at *4 (E.D. Pa. July 27, 2022) (compelling arbitration when the clause was "purposely and conspicuously set off from the remaining text in a blue, underlined font").

### 2. A.J.K. Agreed to Arbitrate Their Claims Against Epic Ten Times.

Epic requires players to affirmatively agree to the EULA or TOS before they can begin playing *Fortnite*. (Shaw Decl. ¶¶ 32-34.) The A.J.K. Accounts were created on May 26, 2019, November 1, 2019, and June 6, 2022. (*Id.* ¶ 52.) At that time, A.J.K. was presented with the text of the EULA and accepted its terms. (*Id.* ¶¶ 56, 72, 77.) A.J.K. agreed to the EULA six other times, on November 18, 2023, March 31, 2024, October 15, 2024, October 19, 2024, December 18, 2024, and December 21, 2024. (*Id.* ¶¶ 58, 60, 62, 64, 66, 74.) A.J.K. agreed to the TOS of December 25, 2025. (*Id.* ¶ 68.) Since a player can accept the EULA and TOS only after logging in to their Epic

Games account, each acceptance could only have been completed by someone possessing the unique display name and password for the A.J.K. Accounts. (*Id*. ¶ 34.)

Each version of the EULA and TOS to which A.J.K. agreed provides for arbitration of all disputes between A.J.K. and Epic "that relate[] to your use or attempted use of Epic's products or services and Epic's products and services generally[.]" (EULA § 12.3.1; *see also* TOS § 17(b).)

Each element of an enforceable arbitration agreement is met. In exchange for the ability to play *Fortnite*, A.J.K. assented to the arbitration agreement by clicking "accept" when presented with the EULA and TOS. "Courts in this district have regularly held that clickwrap agreements manifest sufficient agreement to the terms in the contract." *Pricharda*, 2022 WL 16749033, at *3.

The EULA and TOS contain an opt-out provision. (EULA § 12.6; TOS § 17(a).). A.J.K. could have opted out of the arbitration agreement by sending a written notice with the requisite information to Epic within 30 days of first agreeing to the EULA. (*Id*.) They did not do so. (*Id*. ¶ 79.) A.J.K. "was given the option to say 'no' to the arbitration provision" and freely chose not to do so; they are bound. *Fluke v. Cashcall, Inc.*, 2009 WL 1437593, at *8 (E.D. Pa. May 21, 2009) (compelling arbitration where plaintiff declined to opt out of arbitration agreement); *see also Stephenson v. AT&T Servs., Inc.*, 2021 WL 3603322, at *6 (E.D. Pa. Aug. 13, 2021) (same); *Matthews v. Gucci*, 2022 WL 462406, at *7 (E.D. Pa. Feb. 15, 2022) (same).

Because a contract is "voidable by the minor, not void," A.J.K.'s minority does not vitiate the *formation* of the agreements but affects only whether the resulting agreements may later be *enforced*. *Aetna Cas. & Sur. Co.*, 972 F.2d at 526 (that a contract is voidable "does not mean a contract with a minor is a nullity prior to any [] disaffirmance"); *Chandler*, 90 S.E. at 581 ("contract of an infant is voidable and not void"). A voidable contract is a "valid act that may be avoided, rather than an invalid act that may be confirmed[.]" (5 Williston on Contracts § 9:9 (4th

ed. 2023). Thus, numerous courts have concluded that a minor's infancy when agreeing to the EULA is an "[a]ffirmative defense" that "an otherwise valid contract [is] unenforceable," which must be resolved in arbitration. *Courtright*, 766 F. Supp. 3d at 889 (compelling arbitration of minor's claim against Epic because the "lack of capacity due to minority status does not render a contract absolutely void, but simply voidable"); *accord Dunn*, 749 F. Supp. 3d at 982 (compelling arbitration of minor's claims against Epic); *Antonetti*, 2025 WL 359323, at *6 (same).

### 3. Even if Angie Kesack Agreed to the EULA and TOS on A.J.K.'s Behalf, A.J.K. Is Still Bound to Arbitrate.

Even if A.J.K. contends that they did not accept the arbitration agreements, they are still bound to arbitrate their claims because Angie Kesack accepted them on their behalf.

Estoppel. Equitable estoppel prevents a person from "claim[ing] the benefit of the contract and simultaneously avoid[ing] its burdens". *Scottsdale Ins. Co. v. Kinsale Ins. Co.*, 253 F. Supp. 3d 976, 801 (E.D. Pa. 2017); *Carter v. TD Ameritrade Holding Corp.*, 218 N.C. App. 222, 231 (2012) ("claim[ing] the benefit of the contract and simultaneously avoid[ing] its burdens" would "disregard equity and contravene the purposes underlying enactment of the FAA"). Equitable estoppel thus prevents a person "from challenging an agreement that includes an arbitration clause when that person embraces the agreement and directly benefits from it." *Bouriez v. Carnegie Mellon Univ.*, 359 F.3d 292, 294 (3d Cir. 2004). Here, A.J.K. Account #1 and A.J.K. Account #2 are registered under the name Angie Kesack. (Shaw Decl. ¶ 51.) A.J.K. thus played *Fortnite* on their parent's account—a benefit that they could not have received without their parent's acceptance of the EULA. (*Id.* ¶ 33.) Having knowingly accepted those benefits, equitable estoppel prevents A.J.K. from avoiding their burdens. *See Orellana*, 769 F. Supp. 3d at 1273.

Third-Party Beneficiary. Under the third-party beneficiary doctrine, a non-signatory to a contract is bound when "the contract was entered into for his direct, and not incidental, benefit."

- 12 -

*Hardin v. York Mem. Park*, 221 N.C. App. 317, 324 (2012); *Smay v. E.R. Stuebner, Inc.*, 864 A.2d 1266, 1271 (Pa. Super. 2004) (similar). A.J.K. directly benefited from Angie Kesack's acceptance of the arbitration agreements, because it allowed them to play *Fortnite*. (Shaw Decl. ¶ 33.) Moreover, Angie Kesack entered into the EULA and TOS to provide A.J.K. with access to *Fortnite*. The EULA and TOS expressly capture this. The EULA provides that "IF YOU ARE UNDER THE LEGAL AGE OF MAJORITY, YOUR PARENT OR LEGAL GUARDIAN MUST CONSENT TO THIS AGREEMENT." (EULA, Intro.). The TOS provides in bold and italicized font: "***For any parents or guardians reading this: If you accept these Terms on behalf of a minor in your care for their Epic Games Account, you are agreeing to the Terms on your own behalf and on behalf of the minor.***" (TOS, Intro.)

Agency. A.J.K. also is bound under the "apparent authority" "principle[] of principal-agent law." *Heidbreder v. Epic Games, Inc.*, 438 F. Supp. 3d 591, 596 (E.D.N.C. 2020). *Heidbreder*, 438 F.Supp.3d 591, is instructive. There, a parent argued that the EULA did not bind him because his minor child was the one who accepted the EULA. *Id*. at 596. The court held that because Epic Games accounts "are personalized, associated with specific names and email addresses," secured by the account holder's password, Epic was "justified in believing that the user of the account, who would have needed plaintiff's login credentials, had the authority to agree to the EULA." *Id*. at 597. The same reasoning applies here. A.J.K. Account #1 and A.J.K. Account #2 are registered under Angie Kesack. (Shaw Decl. ¶ 51.)  For that reason, Epic reasonably believed that A.J.K. had parental consent to the EULA, thus binding A.J.K. *See, e.g.*, *Courtright*, 766 F. Supp. 3d at 904 (by using parent's email, defendant reasonably believed minor had parent's consent, and minor was bound by arbitration agreement); *Dunn*, 749 F. Supp. 3d at 982 (same).

- 13 -

*Santiago v. Philly Trampoline Park, LLC*, 343 A.3d 995 (Pa. 2025), is inapplicable. There, the court held that Pennsylvania's "rules of civil procedure" prevented a minor from being bound by a parent's acceptance of an arbitration agreement on the minor's behalf. *Id.* at 1010 (citing Pa.R.C.P. 2026-2049). However, "[a] federal court sitting in diversity must apply state substantive law and federal procedural law." *Chamberlain v. Giampapa*, 210 F.3d 154, 158 (3d Cir. 2000) (citation omitted). Because federal procedural rules do not prohibit a minor from being bound by a parent's acceptance of an arbitration agreement on the minor's behalf, *Santiago* is inapplicable.

Even if it were applicable, *Santiago* is preempted by the FAA, which "requires courts to place arbitration agreements on equal footing with all other contracts." *Kindred Nursing Ctrs. Ltd. P'ship. v. Clark*, 581 U.S. 246, 248 (2017). Thus, "defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue" cannot be used to invalidate an arbitration agreement. *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (citations omitted). *Santiago* specifically distinguished arbitration clauses from forum-selection clauses by stating that arbitration clauses "determine[] the procedure that will be applied to resolve the disputes submitted to arbitration" and that "[r]emoval of these safeguards fundamentally changes the minors' rights in their causes of action and thwarts their protection." *Santiago*, 343 A.3d at 1012. The court held that the lack of procedures in arbitration that to protect the minor were "fatal" to the defendant's motion to compel arbitration. *Id.* Because *Santiago's* holding derived from the fact that it was an arbitration agreement at issue, it is preempted by the FAA.

### B. The EULA and TOS Delegate Threshold Issues of Arbitrability to the Arbitrator.

The Court should not decide whether A.J.K.'s claims are within the scope of the arbitration clause because the EULA and TOS delegate the resolution of such threshold issues to the arbitrator. (EULA § 12.3.1 ("You and Epic agree that whether a dispute is subject to arbitration under this

Agreement will be determined by the arbitrator rather than a court."); TOS § 17 (same).) This delegation extends to "the validity, enforceability, [and] scope" of the arbitration agreement. (*Id.*) Because "the parties made a clear and unmistakable agreement to delegate issues of arbitrability to the arbitrator," the court is "required to treat the provision as valid and enforce it pursuant to section four of the Federal Arbitration Act." *Eichlin v. GHK Co.*, 746 F. Supp. 3d 247, 253-54 (E.D. Pa. 2024); *Coulter*, 2021 WL 735726, at *4 (same).

A.J.K. cannot avoid arbitration by claiming to disaffirm the EULA or TOS. (FAC ¶ 276.) "[D]isaffirmation does not relate to contract formation; rather, it goes to whether the [EULA] is enforceable, an issue that the parties delegated to an arbitrator." *See N.A.*, 2023 WL 8587628, at *4; *see also K.F.C. v. Snap Inc.*, 29 F.4th 835, 838 (7th Cir. 2022) ("As long as state law permits a child to ratify a contract, youth must be a defense rather than an obstacle to a contract's formation, and as a defense it goes to the arbitrator"); *In re StockX Customer Data Sec. Breach Litig.*, 19 F.4th 873, 883-84 (6th Cir. 2021) ("[P]laintiffs' infancy argument" was "a matter of enforceability" delegated to the arbitrator.).[5]

Where "the EULA clearly and unmistakably delegates to the arbitrator questions of the 'validity, enforceability, or scope' of the EULA" and the plaintiff's claims "as well as their disaffirmance defense fall within the scope of the EULA's arbitration agreement," arbitration must be compelled. *S.T.G. ex rel. Garcia v. Epic Games, Inc.*, 752 F. Supp. 3d 1200, 1211 (S.D. Cal.

---

[5] Case law across the country is in accord. *See, e.g.*, *Devine v. Bethesda Softworks, LLC*, 636 F. Supp. 3d 564, 573 (D. Md. 2022) (rejecting argument that "because [plaintiff] was a minor when he entered into the [agreement], the Court must decide his defense of capacity to contract"); *A.C. ex. rel .Carbajal v. Nintendo of Am. Inc.*, 2021 WL 1840835, at *2 (W.D. Wash. Apr. 29, 2021) (compelling arbitration because minor's disaffirmation "does not relate to contract formation"); *Ingram v. Neutron Holdings, Inc.*, 467 F. Supp. 3d 575, 581 (M.D. Tenn. 2020) (compelling arbitration because "minor's repudiation of a contract raises a question of arbitrability"); *Kuznik v. Hooters of Am., LLC*, 2020 WL 5983879, at *3-5 (C.D. Ill. Oct. 8, 2020) ("arguments regarding the voidability of the Agreement due to minority" are questions of "arbitrability").

2024). For that reason, in similar cases alleging video game addiction, judges have repeatedly concluded that the arbitrator must resolve whether a minor has validly disaffirmed the EULA. *See*, *e.g.*, *Angelilli*, 2025 WL 524276, at \*15 (the EULA's delegation clause "constitutes a clear and unmistakable delegation of authority to the arbitrator" to resolve whether the minor "lacked capacity to accept the EPIC EULA" or "expressly disaffirmed it"); *Courtright*, 766 F. Supp. 3d at 889 (Plaintiff's "status as a minor, and the defense of disaffirmance" are "[a]ffirmative defense[s]" that "must be raised before the arbitrator when the contract includes a valid delegation clause").

### C. A.J.K. Cannot Disaffirm the Contract.

Even if the Court were to reach questions of validity and enforceability, the EULA and TOS are enforceable. A.J.K.'s purported disaffirmance of the EULA and TOS in the FAC is ineffective because their continued gameplay precludes disaffirmance. Under both North Carolina and Pennsylvania law, a minor may not "repudiate a transaction upon the ground of a want of capacity" yet "at the same time retain and enjoy any benefit derived from it." *Wright v. Hepler*, 194 N.C. 542, 542 (1927) (internal quotation omitted); *Frank Spangler Co.*, 53 Pa. Super. at 546 ("An infant cannot disaffirm a contract and at the same time retain what he has received under it."). Thus, when a minor continues to use the counterparty's services, they "manifest[] an intention not to disaffirm the contract." *C.M.D. ex rel. De Young v. Facebook, Inc.*, 621 F. App'x 488, 489 (9th Cir. 2015); *see also Doe v. Epic Games, Inc.*, 435 F. Supp. 3d 1024, 1036 (N.D. Cal. 2020) (minor must stop playing *Fortnite* to disaffirm).

Here, A.J.K.'s purported disaffirmance is ineffective because they continued to play *Fortnite* and accepted the TOS since filing of the Complaint. (Shaw Decl. ¶¶ 68-70.) A.J.K. thus continues to retain the benefits of the agreements.

### D. The Court Should Stay These Proceedings Pending Arbitration.

Section 3 of the FAA requires a district court to stay litigation if the action involves an

issue referable to arbitration. *Smith v. Spizzirri*, 601 U.S. 472, 478 (2024) (if "a lawsuit involves an arbitrable dispute, and a party requests a stay pending arbitration, § 3 of the FAA compels the court to stay the proceeding"). The Plaintiff in this case is A.J.K.'s legal guardian, Angie Kesack. FAC ¶ 12.) However, Plaintiff "is not pursuing any claims in her individual capacity." (*Id.*) Accordingly, the only claims at issue are the ones that A.J.K. has already agreed to arbitrate, and the Court should stay these proceedings as to Epic pending arbitration.

## II.    **ALTERNATIVELY, THE CASE AGAINST EPIC SHOULD BE TRANSFERRED.**

While this Court should compel arbitration of A.J.K.'s claims against Epic, this case would still be in the wrong forum even without the arbitration provision. The EULA's and TOS's mandatory forum selection clause require A.J.K.'s claims to be litigated in North Carolina. (EULA § 11; TOS § 16.) The Supreme Court instructs "proper application of § 1404(a) requires that a forum-selection clause should be given controlling weight in all but the most exceptional cases." *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 59-60 (2013) (quotation omitted). Because there are no such circumstances here, transfer to the Eastern District of North Carolina is warranted pursuant to 28 U.S.C. § 1404(a).

### A.    **The Mandatory Forum Selection Clause in the EULA and TOS Requires All Disputes in Court Be Heard in North Carolina.**

"[G]iven that we presume the validity of such clauses," demonstrating that a forum selection clause is invalid "is a difficult argument to make." *Olde Homestead Golf Club v. Electronic Transaction Sys. Corp.*, 714 F. App'x 186, 189 (3d Cir. 2017). The opposing party must show that the clause (1) "is the result of fraud or overreaching, (2) its enforcement would violate a strong public policy of the forum, or (3) its enforcement would result in litigation so seriously inconvenient and unreasonable that it would deprive a litigant of his or her day in court." *Feldman*, 513 F. Supp. 2d at 246. Plaintiff cannot establish any of these factors.

*First*, the EULA and TOS were not the result of fraud or overreaching. To invalidate a forum selection clause based on fraud, "the party challenging the clause must show that the clause itself was procured through fraud." *Nemo Assoc., Inc. v. Homeowners Mkt. Servs. Int'l, Inc.*, 942 F. Supp. 1025, 1028 (E.D. Pa. 1996). The FAC does not allege that A.J.K.'s acceptance of the forum selection clause was procured by fraud; it thus "cannot be invalidated on that ground." *Lester v. Gene Exp., Inc.*, 2009 WL 3757155 at *3 (D.N.J. Nov. 10, 2009). To invalidate a forum selection clause based on overreaching, the non-movant must make a strong showing that "unfair exploitation" induced assent to the "forum selection clause itself, not the contract as a whole." *Sahara Sam's Oasis, LLC v. Adams Cos.*, 2010 WL 3199886, at *3 (D.N.J. Aug. 12, 2010). Nothing of the sort occurred here. A.J.K. agreed to the EULA and TOS so they could access *Fortnite*. Courts routinely enforce forum selection clauses in such circumstances. *See, e.g.*, *Lewis v. Nat'l Bd. of Osteopathic Med. Examiners, Inc.*, 2020 WL 7260747, at *7 (E.D. Pa. Dec. 10, 2020) (no overreaching although plaintiffs "have essentially no choice when faced with defendant's Terms and Conditions"); *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 593-94 (1991) (enforcing non-negotiated forum selection clause).

*Second*, enforcing the agreed forum is consistent with public policy. A.J.K.'s acceptance of the EULA, TOS, and their mandatory forum selection clauses was a condition for access to *Fortnite*. (Shaw Decl. ¶¶ 32-33, 46.) It is "consistent with the public policy of Pennsylvania to enforce the forum selection clause in order to give force to the parties' agreement." *Kilduff v. Jayco*, 2023 WL 3361187, at *3 (E.D. Pa. May 10, 2023).

*Third*, litigating this case in North Carolina would not deprive Plaintiff of their day in court. "Mere inconvenience or additional expense" does not deprive a plaintiff of their day in court; so long as "the agreed upon forum is available to plaintiff and said forum can do substantial justice

to the cause of action then plaintiff should be bound by his agreement." *Cent. Contracting Co. v. Maryland Cas. Co.*, 367 F.2d 341, 344 (3d Cir. 1996). The Eastern District of North Carolina can afford Plaintiff the same relief that this Court can.

Courts routinely enforce forum selection clauses that would require the plaintiff to litigate outside of their home forum by granting transfers pursuant to Section 1404(a). *See, e.g.*, *Feldman*, 513 F. Supp. 2d at 248-49 (enforcing California forum selection clause); *Kilduff*, 2023 WL 3361187, at *6 (enforcing Indiana forum selection clause). This Court should do the same here.[6]

**B.     The Other Section 1404(a) Factors Favor Transfer.**

The Section 1404(a) factors also favor transfer. When a "mandatory forum selection clause is at play, only the public interests are considered." *Frutera Agrosan Exp. SPA v. MSC Mediterranean Shipping Co., S.A.*, 727 F. Supp. 3d 526, 533 (E.D. Pa. 2024). The public interest factors include "practical considerations that could make the trial easy, expeditious, or inexpensive," "the local interest in deciding local controversies at home," "the public policies of the fora," and "the familiarity of the trial judge with the applicable state law in diversity cases." *Feldman*, 513 F. Supp. 2d at 248. The public interest factors "will rarely defeat a transfer motion, [and] the practical result is that forum selection clauses should control except in unusual cases." *Atl. Marine*, 571 U.S. 49 at 64. This is not the unusual case.

*First*, practical considerations that would make a trial "easy, expeditious, or inexpensive" favor transfer. *Fortnite* was developed in North Carolina, and Epic's headquarters is in Cary, North Carolina. (Shaw Decl. ¶ 2.) The Eastern District of North Carolina is closer to the pertinent

---

[6] The EULA's and TOS's forum selection clauses are separate from the arbitration agreement and can be independently enforced. Even if A.J.K. were to argue they disaffirmed the forum selection clauses, such purported disaffirmance would be ineffective because they continue to play *Fortnite*. *See, e.g.*, *C.M.D. ex rel. De Young*, 621 F. App'x at 489 ("Plaintiffs manifested an intention not to disaffirm the contract" by "continuing to use facebook.com").

witnesses, and conducting this trial in that forum would prevent "unnecessary travel time and possible expense." *Stephenson v. Nat'l R.R. Passenger Corp.*, 2012 WL 4932043, at *3 (E.D. Pa. Oct. 17, 2012) (practical considerations favor transfer to forum closer to witnesses).

*Second*, the local interests in deciding local controversies at home and the public policies of the fora weigh heavily in favor of transfer. Epic maintains its principal place of business in North Carolina. (Shaw Decl. ¶ 2.) North Carolina "has a compelling interest in regulating the conduct of businesses in its state." *Ricoh Co., Ltd. v. Honeywell, Inc.*, 817 F. Supp. 473, 486 (D.N.J. 1993). The state in which a corporation is incorporated "has a greater interest in ensuring its public policy of enforcing its negligence law than [this court] do[es]." *Stanley v. Columbia Sussex Mgmt., LLC*, 2018 WL 2994642, at *5 (E.D. Pa. June 14, 2018).

*Third*, the familiarity of the trial judge with the applicable law favors transfer. The EULA and TOS contain North Carolina choice-of-law provisions. (EULA § 11; TOS § 16.)  North Carolina courts will be the most familiar with the law governing this dispute.

## CONCLUSION

A.J.K. and Epic agreed to send their disputes to arbitration. Plaintiff now attempts to wield A.J.K.'s youth as a sword and a shield, letting A.J.K. continue to enjoy Epic's side of the bargain— continued access to *Fortnite*—and at the same time attempting to disaffirm A.J.K.'s obligation to arbitrate disputes under the same agreement. As every court to have considered nearly identical claims against Epic has done, the Court should compel Plaintiff to arbitrate A.J.K.'s claims, and stay this action pending the outcome of that arbitration. In the alternative, the Court should transfer this case to the Eastern District of North Carolina under the mandatory forum selection clause.

Dated:  April 3, 2026                                HUESTON HENNIGAN LLP


By: _____
        Moez M. Kaba
        Allison L. Libeu
        Padraic W. Foran
        Adam F. Minchew

        *Attorneys for Defendant*
        *Epic Games, Inc.*