**IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| ANGIE KESACK, as Parent and Natural Guardian of AJK, a minor,<br><br>Plaintiff,<br><br>v.<br><br>ROBLOX CORPORATION, EPIC GAMES, INC., MICROSOFT CORPORATION, MOJANG AB, and JOHN DOES 1-50,<br><br>Defendants. | Civil Action No. 2:25-cv-06607-MRP<br><br>Hon. Mia Roberts Perez |

**DEFENDANT ROBLOX CORPORATION'S REPLY IN SUPPORT OF MOTION TO COMPEL PLAINTIFF TO ARBITRATION AND STAY PROCEEDINGS**

## I. INTRODUCTION

Plaintiff does not dispute the essential facts establishing an enforceable arbitration agreement. Instead, Plaintiff rests on arguments this Court already considered and rejected just two months ago in *Tomlin v. Roblox Corp*., No. 25-cv-4301, 2026 WL 1412606 (E.D. Pa. May 20, 2026) (Perez, J.)—and again weeks ago in *French v. Roblox Corp. et al.*, No. 25-cv-05306, — F. Supp. 3d —, 2026 WL 2195890 (E.D. Pa. July 29, 2026) (Perez, J.). Plaintiff's additional arguments are unpersuasive. The result should be the same.

## II. ARGUMENT

### A. Roblox Has Established an Agreement to Arbitrate

Roblox has provided sufficient evidence of an arbitration agreement under the summary judgment standard governing this motion. *See Singh v. Uber Techs. Inc.*, 939 F.3d 210, 216 (3d Cir. 2019). Plaintiff's counsel provided Roblox with identifying information for Plaintiff, which Roblox matched in its records to Plaintiff's Accounts. ECF No. 50-2 ("Jit Decl.") ¶ 6. Plaintiff alleges that they played and continue to play Roblox, *see, e.g.*, ECF No. 47 ("FAC") ¶¶ 9, 13, and does not dispute that users cannot play Roblox without creating an account and agreeing to the Terms. FAC ¶ 89; Jit Decl. ¶ 9. Roblox's records show each instance Plaintiff's Accounts agreed to the Terms, including through multiple purchases of Robux, gift card redemptions, and pop-up acceptances of updated Terms. *See* Jit Decl. Exs. 1-3.

This Court compelled arbitration on a nearly identical record in *French*, 2026 WL 2195890, at *5–6, and in *Tomlin*, 2026 WL 1412606, at *6–8, as have courts around the country when considering substantially identical allegations. *Id.* at *6 (collecting cases); *Gibson v. Roblox Corp.*, No. 24STCV32897 (Cal. Super. Ct. L.A. Cnty. July 15, 2026)[1]; *see also Garcia v. Roblox Corp.*,

[1] Attached hereto as Exhibit A.

No. 25-cv-03476, 2026 WL 413636 at *3–8 (C.D. Cal. Feb. 11, 2026).

Because Roblox offered evidence of an enforceable agreement, Plaintiff must present affirmative evidence to defeat summary judgment. *See Est. of Smith v. Marasco*, 318 F.3d 497, 514 (3d Cir. 2003). Plaintiff offered ***nothing*** but attorney argument, which rests on the mistaken premise that Roblox has not established that Plaintiff or their Responsible Adult used the Accounts to agree to the Terms. This Court twice rejected the same argument, finding that "the undisputed evidence before the Court shows" that Roblox offered the opportunity to play in exchange for agreement to the Terms, and that the plaintiff "could not have done [so] without … acceptance of the [Terms]." *Tomlin*, 2026 WL 1412606, at *8; *French*, 2026 WL 2195890, at *5–6. There, as here, the plaintiff argued Roblox had produced insufficient evidence of "who was actually on the other side of the screen." *Tomlin*, 2026 WL 1412606, at *8; *French*, 2026 WL 2195890, at *6. This Court disagreed, holding that such speculation "does not create a genuine dispute." *Id.*; *Tomlin*, 2026 WL 1412606, at *7.[2] This is particularly true when technological evidence like Roblox's "indicates that it was Plaintiff, and not some other person – whom Plaintiff has not even attempted to identify," who agreed to the Terms. *Schrock v. Nomac Drilling, LLC*, No. 15-cv-1692, 2016 WL 1181484, at *4 (W.D. Pa. Mar. 28, 2016) (rejecting the plaintiff's "naked assertions that he never" agreed to arbitration). Indeed, this Court recognized that "mere speculation that someone else could have had [plaintiff's] unique log-in information and could have been using [plaintiff's] account when the terms were updated is insufficient to establish a *genuine* dispute." *Tomlin*, 2026 WL 1412606, at *7; *French*, 2026 WL 2195890, at *5–6. The

[2] *See also Garcia*, 2026 WL 413636, at *3 n.3 (rejecting this exact argument as "wholly unpersuasive" and "intellectually dishonest" where—like Plaintiff did here—the plaintiffs "allege[d] in their own complaint that they created accounts"); *Gibson*, Order at 10 (agreeing with the thrust of *Garcia* and *Tomlin*, finding "the likely clickers were [the plaintiff] and his parents").

same result follows here.

Plaintiff's reliance on the out-of-circuit decision in *Murphy v. Roblox Corp.*, No. 23-cv-1940, 2025 WL 2327100, at *5 (S.D. Cal. July 9, 2025), is misplaced. There, the plaintiff presented affirmative evidence about the specific actions they did and did not allow their children to take on the Roblox Platform to argue that they did not agree to Roblox's Terms. *See id*. Plaintiff provides none here. *See Gibson*, Order at 10 (distinguishing *Murphy* because the plaintiff submitted "detailed" declarations, affirmatively denied interactions, and it was unclear if the plaintiff linked card information to the account).

Plaintiff also cites Pennsylvania's Uniform Electronic Transactions Act ("UETA"), ECF No. 76 ("Opp.") at 7, but the UETA supports Roblox. As this Court recognized in *Tomlin*, the UETA validates clickwrap agreements, expressly stating that a contract may be formed by electronic interaction and that such agreements are enforceable where the website owner can show that access required clicking an "I Agree" button. 2026 WL 1412606, at *7 n.6 (citing 73 P.S. § 2260.310(2); *id.* cmnts. 2–3). "This is consistent with cases applying Pennsylvania law, which generally enforce clickwrap agreements." *Id.* (citing *Pricharda v. Checkr, Inc*., No. 22-cv-3180, 2022 WL 16749033, at *3 (E.D. Pa. Nov. 7, 2022)). Plaintiff could only have played Roblox by agreeing to the Terms, so the resulting clickwrap agreement is properly attributed to Plaintiff.

Plaintiff does not present evidence challenging Roblox's showing that Plaintiff agreed to the Terms directly, *see* ECF No. 50-1 ("Mot.") at 8-10, nor does Plaintiff address Roblox's argument that the agreement remains valid because Plaintiff has not effectively disaffirmed. *See id*. at 13-15; *infra* § II.D. Accordingly, the Court can end its analysis here and compel arbitration.

### B. <u>Plaintiff Is Also Bound By Their Responsible Adult's Agreement To Arbitrate</u>

Putting aside Plaintiff's enforceable direct assent, to the extent Plaintiff's Responsible Adult agreed to the Terms (as the Terms instruct), she did so on Plaintiff's behalf, binding Plaintiff

to the Terms with Roblox. Mot. at 10-13. This outcome is unchanged by *Santiago v. Philly Trampoline Park, LLC*, 343 A.3d 995 (Pa. 2025). This Court conducted an extensive analysis of *Santiago* in *Tomlin* and held it preempted by the FAA. 2026 WL 1412606, at *13–15. Undeterred, Plaintiff rehashes the same arguments this Court rejected. The same outcome should follow.

Plaintiff contends that *Santiago*'s rule is "generally applicable" and thus shielded by the FAA's savings clause because it derives from "centuries-old" Pennsylvania property and estate law. *See* Opp. at 10-12. This Court considered and rejected the same argument in *Tomlin*, explaining that although *Santiago's* general principles are "grounded in generally applicable policies," *Santiago*'s actual holding "did not hold that a parent cannot enter *any* contract on a minor's behalf." 2026 WL 1412606, at *15. Rather, *Santiago* "prohibited parents from entering an arbitration agreement on their child's behalf—i.e., waiving a minor's procedural right to have court supervision over their claims." *Id*. This Court thus held that, "[l]ike the rule *Kindred Nursing Centers* invalidated, *Santiago*'s rule fails to put arbitration agreements involving minors' claims on an equal plane with other contracts." *Id*. The rule "derive[s] [its] meaning from the fact that an agreement to arbitrate is at issue," *id*. (quoting *Kindred Nursing Ctrs. Ltd. P'ship v. Clark*, 581 U.S. 246, 251 (2017)), because *Santiago*'s express reasoning rested on its characterization of arbitration as a forum "devoid of judicial protection" that "strips the minor" of procedural protections—a characterization flatly rejected by United States Supreme Court precedent. 343 A.3d at 1014; *see Viking River Cruises, Inc. v. Moriana*, 596 U.S. 639, 653 (2022) ("An arbitration agreement . . . does not alter or abridge substantive rights; it merely changes how those rights will be processed."); Mot. at 10-13.

Plaintiff further argues that *Tomlin*'s preemption analysis rests on the flawed "assumption" that *Santiago* "would not invalidate a car lease entered into by a parent on behalf of a minor." Opp.

at 12. Instead, Plaintiff attempts to reframe *Santiago* as applying to any contract that "touches" the minor's estate. *See id*. at 12-13. But it is Plaintiff's characterization that is "flawed," not this Court's conclusion. The Pennsylvania Supreme Court in *Santiago* expressly rested its decision on its view that arbitration deprives the minor of judicial protection—a position that directly flouts the Supreme Court's articulation in *Viking River Cruises*, 596 U.S. at 653, *supra*, and precisely the type of arbitration-specific reasoning that the FAA preempts. *See Kindred Nursing Ctrs*., 581 U.S. at 251–52.

Plaintiff's lone new argument—that *Santiago*'s rule was based on "a guardian's authority over the child's estate" and, hence, represents "state family law" immune to FAA preemption—is meritless. *See* Opp. at 13-14 (citing *Rose v. Rose*, 481 U.S. 619, 625 (1987) and *Hisquierdo v. Hisquierdo*, 439 U.S. 572, 581 (1979)). Courts have applied a heightened standard for federal preemption to conflicts between federal benefit programs and core state family and marital property rules—"divorces," "community property concepts," *Hisquierdo*, 439 U.S. at 581–82, and "child support." *Rose*, 481 U.S. at 625. Plaintiff presumes that laws regarding arbitration agreements or forum selection clauses represent a "core principle of state family law." Opp. at 14. But Plaintiff cites no authority applying this doctrine to such issues—because none exists.

Citing United States Supreme Court precedent, this Court correctly rejected Plaintiff's premise, recognizing that arbitration agreements do not dispense with property from the minor's estate—rather, they are "'a specialized kind of forum-selection clause,' which does 'not alter or abridge substantive rights' but 'merely changes how those rights will be processed.'" 2026 WL 1412606 at *14 (quoting *Viking River Cruises,* 596 U.S. at 653); *see also French*, 2026 WL 2195890, at *9. The heightened preemption standard Plaintiff invokes is therefore inapplicable.

Plaintiff also incorrectly argues that they cannot be compelled to arbitration as third-party

beneficiaries because the benefit of using the Roblox Platform does not arise from the Terms "that happen to govern it." *See* Opp. at 15-16. But Plaintiff's claims arise from their use of the Roblox Platform, which they could not use unless their Responsible Adult agreed to the Terms. *See* Mot. at 3-5. Their claims thus arise from the parties' contractual relationship.

Plaintiff also ignores the Terms' broad arbitration provision, which encompasses extracontractual claims. *See* Mot. at 17-18. Third party beneficiaries "cannot avoid arbitration so long as [their] claims fall within the scope of the arbitration requirement." *Doeff v. Transatlantic Reinsurance Co.*, No. 07-2110, 2007 WL 4373041, at *3 (E.D. Pa. Dec. 13, 2007); *Stone v. Pennsylvania Merch. Grp., Ltd.*, 949 F. Supp. 316, 325 (E.D. Pa. 1996) (finding party was a third-party beneficiary of arbitration agreement and rejecting argument that claims had "nothing to do with the contract" because the plaintiff "agreed to arbitrate all disputes arising out of his employment, not merely those arising out of his employment contract"); *Fry v. Am. Honda Motor Co.*, No. 23-cv-01782, 2025 WL 937766, at *7 (M.D. Pa. Mar. 27, 2025) (same where agreement "expressly cover[ed] claims" that formed "the essence of this lawsuit").

Accordingly, because the Terms and Plaintiff's Responsible Adult's acceptance were intended to, and did, allow Plaintiff's use of the Roblox Platform, Plaintiff is a third-party beneficiary of the agreement between Roblox and Plaintiff's Responsible Adult. Mot. at 11.

**C. <u>Equitable Estoppel Independently Warrants Arbitration</u>**

Equitable estoppel independently compels arbitration because Plaintiff accepted the Terms' direct benefits. Mot. at 15-16. Plaintiff's opposition again relies on the mistaken premise that because their claims "sound in tort," they do not accept a direct benefit of the Terms by continuing to use the Roblox Platform. Opp. at 15-16. But as explained, Plaintiff's claims arise from the parties' contractual relationship. *See supra* § II.B. And equitable estoppel applies when "non-signatories to a contract seek to avoid arbitration clauses after accepting ***all manner of***

***benefits*** flowing directly from signatories' performance of that contract. *See HealthplanCRM, LLC v. AvMed, Inc*., 458 F. Supp. 3d 308, 329 (W.D. Pa. 2020) (emphasis added). That is precisely what occurred here: Plaintiff knowingly used and received the benefits of the Roblox Platform, made possible through the Terms. *See French*, 2026 WL 2195890, at *8 (holding that the plaintiff "continues to receive new, additional benefits each time [they] use[]" the platform); *Gibson*, Order at 14-15 (finding equitable estoppel binds plaintiff to the Terms because plaintiff "knowingly benefited from the Terms of Use" through use of the platform and purchase of Robux). The Terms bind Plaintiff.

### D. Plaintiff's Purported Disaffirmance Is Waived, Delegated, And Fails

Plaintiff's Opposition does not address Roblox's argument that Plaintiff has not effectively disaffirmed the Terms. Mot. at 13-15. Plaintiff's only mention of disaffirmance amounts to throwaway statements that "AJK disaffirmed any purported agreement by filing this lawsuit" in the introduction, Opp. at 3, and that Plaintiff's complaints "expressly disaffirmed any agreement with Defendants" in the facts section. *Id*. at 4. Plaintiff has thus conceded the argument. *See Hausknecht v. John Hancock Life Ins. Co. of New York*, 334 F. Supp. 3d 665, 682–83 (E.D. Pa. 2018) ("Plaintiffs respond only selectively" and "[b]y failing to respond to ... Defendant's arguments, Plaintiffs have conceded them").

Moreover, Plaintiff's purported disaffirmance is delegated to the arbitrator. *Tomlin*, 2026 WL 1412606, at *9-10; *French*, 2026 WL 2195890, at *7. And on the merits, Plaintiff's disaffirmance fails because Roblox's records confirm Plaintiff used the Roblox Platform months after Plaintiff filed this lawsuit. Jit Decl. ¶ 8; *Tomlin*, 2026 WL 1412606, at *11, *12 n.9; *French*, 2026 WL 2195890, at *5.

## III. CONCLUSION

For the foregoing reasons, the Court should compel arbitration and stay this action.

Dated: August 14, 2026

By: /s/ *Jay E. Kagan*
Jay E. Kagan

DILWORTH PAXSON LLP
Jay E. Kagan, Esquire
John J. Higson, Esquire
1650 Market Street, Suite 1200
Philadelphia, PA 19103
Tel: (215) 575-7000
jkagan@dilworthlaw.com
jhigson@dilworthlaw.com

ORRICK, HERRINGTON & SUTCLIFFE LLP
David P. Fuad (*pro hac vice*)
John P. Badalich (*pro hac vice*)
355 South Grand Avenue
Suite 2700
Los Angeles, CA 90071-1596
Tel: (213) 629-2020
dfuad@orrick.com
jbadalich@orrick.com

Behnam Dayanim (*pro hac vice*)
2100 Pennsylvania Avenue N.W.
Washington, D.C. 20037
Tel: (202) 339-8400
bdayanim@orrick.com

*Attorneys for Defendant*
*Roblox Corporation*

**CERTIFICATE OF SERVICE**

I, Jay E. Kagan, Esquire, hereby certify that on the 14th day of August, 2026, I caused the foregoing Defendant Roblox Corporation's Reply in Support of Motion to Compel Plaintiff to Arbitration and Stay Proceedings to be electronically filed with the court, made available for viewing and download, and electronically served by the CM/ECF System upon all consenting counsel of record.

Dated: August 14, 2026

*/s/ Jay E. Kagan*
Jay E. Kagan