# EXHIBIT A

FILED
Superior Court of California
County of Los Angeles

JUL 15 2026

David W. Slayton, Executive Officer/Clerk of Cour
By: H. Kim, Deputy

SUPERIOR COURT OF THE STATE OF CALIFORNIA
FOR THE COUNTY OF LOS ANGELES

| | |
|---|---|
| EVETTE GIBSON, as Guardian ad Litem and on behalf of IHG, a minor,<br><br>Plaintiff,<br><br>vs.<br><br>ROBLOX CORPORATION, et al.,<br><br>Defendants | Case No. 24STCV32897<br><br>ORDER GRANTING ROBLOX'S MOTION TO COMPEL ARBITRATION |

**Overview**

The motion is granted. Minor plaintiff IHG's claims against defendant Roblox will be arbitrated and will not be heard in the California Superior Court. The detailed analysis follows.

The Court makes the following preliminary observations on process. Litigants in the California Superior Court have a constitutional right to a jury trial in disputes of this type. Of course litigants can knowingly and intelligently waive a constitutional right—by agreeing, for instance, to arbitrate their dispute. In the face of an asserted agreement to arbitrate, a party seeking to enforce that agreement must prove at least that the parties to the dispute indeed agreed to forgo the courtroom for the arbitral venue. In the days of blue-inked contracts,

letters and even emails, it was relatively easy to figure out who made the agreement. Not so in the era of e-commerce.

The first formidable challenge in minor plaintiff video gaming litigation disputes where a party seeks to enforce an arbitration agreement is to determine: if there is an agreement, who agreed? The minor plaintiff? The minor plaintiff's parents? The minor plaintiff's older brother? The neighbor kid down the street who is using the minor plaintiff's console? And how do we know? The court is obligated to undertake a forensic dissection of gamertags and other cryptic account identifiers, and then look to a history of clicks of scroll wrap, click wrap, ad-platform blocker cards, browse wrap, checkbox wrap, sign-in wrap, hybrid wrap and the like. Dissection is the right analog. Like a frog in a high school biology class, the subject electronic files are splayed out on a table beneath a bright light, and the court employs its magnifying glass and tweezers.

We hear that both federal and state policy strongly favor arbitration agreements because they present a rapid and inexpensive alternative to conventional litigation. (A policy, one might observe, apparently not shared by many thousands of litigants who desperately seek to stay in court notwithstanding their purported agreement reflected by a click-through on a scroll wrap.) Rapid and inexpensive do not describe the front end of the litigation. As this motion shows, the preliminary question of the correct venue for the dispute, courtroom or conference room, takes on a life of its own. A year and a half after filing, hundreds of pages of filings including company witness, party, and human factors and child development experts' declarations, all with evidentiary objections and responses to evidentiary objections, constitute the record on this motion. The California *Gamboa* rule necessitates the filing of a sur-reply (so four rounds of briefing for the court) because much of the actual important evidence only comes in on reply. The court must dig deep into the processes of sophisticated IT companies to decipher the code and other hints within their records suggesting who likely clicked the "agree" box.

And all of this is before the court's taking on the legal issues of a minor's disaffirmance, equitable estoppel, parental power to bind a child to a contract (for necessities

of life? for everything?), third-party beneficiary, a minor's sublicensee status to the license granted to her parent, and the scope of delegation of disputes to an arbitrator. As the papers here show, courts all over the country are engaged in these case-by-case disputes consuming untold hundreds of hours of judicial resources.

Nothing here is intended to be critical of the litigants. They did not create this labyrinthine process. They have to live with it, too. But there has to be a better way.

**Background**

On December 13, 2024, Evette Gibson, as Guardian ad Litem and on behalf of IHG, a minor, filed this action arising out of IHG's video game use, specifically playing Roblox, Minecraft, and Fortnite. The First Amended Complaint asserts fifteen causes of action against Roblox Corporation, Epic Games, Inc., Microsoft Corporation, Mojang AB. The case is part of JCCP 5363 Video Game Addition Cases. On November 13, 2025, Defendant Roblox the instant motion seeking to compel Plaintiff's claims to arbitration.

**Plaintiff's Evidentiary Objections**

Plaintiff's evidentiary objections are overruled. The defense declarations provide an adequate basis for the declarants' personal knowledge and authentication of the matters therein. The declarations do not constitute improper lay opinion and do not contain hearsay without exception.

Additionally, Plaintiff's wholesale objection to reply evidence is unsupported by California law. While it is generally true that reply evidence is improper, motions to compel arbitration are exceptions to this rule as the moving party has a minimal burden until authenticity is challenged. (See e.g. *Espejo v. Southern California Permanente Medical Group* (2016) 246 Cal.App.4th 1047, 1060 ("Because defendants were not required to establish the authenticity of Espejo's signature on the DRP until challenged by Espejo in his opposition, they were not required to file the supplemental Tellez declaration pursuant to the deadline set by section 1005, subdivision (b) for a party's moving papers."); *Garcia v. Stoneledge Furniture LLC* (2024) 102 Cal.App.5th 41, 55 ("RAC could have provided a supplemental declaration in reply to Garcia's opposition").)

**Motion to Compel Arbitration**

***Standard***

"California law reflects a strong public policy in favor of arbitration as a relatively quick and inexpensive method for resolving disputes. To further that policy, [Code of Civil Procedure] section 1281.2 requires a trial court to enforce a written arbitration agreement unless one of three limited exceptions applies. Those statutory exceptions arise where (1) a party waives the right to arbitration; (2) grounds exist for revoking the arbitration agreement; and (3) pending litigation with a third party creates the possibility of conflicting rulings on common factual or legal issues." (*Acquire II, Ltd. v. Colton Real Estate Group* (2013) 213 Cal.App.4th 959, 967; Code Civ. Proc. § 1281.2.) Similarly, "under the FAA, the strong federal policy favoring arbitration agreements requires courts to resolve any doubts concerning arbitrability in favor of arbitration." (*Valencia v. Smyth* (2010) 185 Cal.App.4th 153, 176 (internal quotations omitted).) "The party asserting the FAA applies to an agreement has the burden to demonstrate FAA coverage by declarations and other evidence." (*Evenskaas v. California Transit, Inc.* (2022) 81 Cal.App.5th 285, 292.)

In deciding a petition to compel arbitration, trial courts must decide first whether an enforceable arbitration agreement exists between the parties, and then determine the second gateway issue whether the claims are covered within the scope of the agreement. (*Omar v. Ralphs Grocery Co.* (2004) 118 Cal.App.4th 955, 961.) The opposing party has the burden to establish any defense to enforcement. (*Gatton v. T-Mobile USA, Inc.* (2007) 152 Cal.App.4th 571, 579 ("The petitioner, T–Mobile here, bears the burden of proving the existence of a valid arbitration agreement and the opposing party, plaintiffs here, bears the burden of proving any fact necessary to its defense.").) Procedurally, a petition to compel arbitration or stay proceedings must state verbatim the provisions providing for arbitration, or must have a copy of them attached. (Cal. R. Ct., rule 3.1330.)

***Defendant Met Its Initial Burden***

"With respect to the moving party's burden to provide evidence of the existence of an agreement to arbitrate, it is generally sufficient for that party to present a copy of the contract to the court." (*Baker v. Italian Maple Holdings,* LLC (2017) 13 Cal.App.5th 1152, 1160.)

The First Amended Complaint alleges "[i]ndividuals that wish to play Roblox must create a Roblox account" and "[i]n order to create a Roblox account, individuals must include a birthdate, username, and password." (FAC ¶¶ 90-91.) Roblox provides its Terms of Use effective between January 12, 2022 to the present, (Jit Decl. ¶¶ 49-52, Ex. 18-21), and quotes the included arbitration provision it its motion. (Mot. at 19:3-20:28.) Roblox states there are "two Roblox accounts belonging to IHG, created on March 5, 2018 (the 'Gibson 2018 Account') and July 24, 2022 (the 'Gibson 2022 Account')." (Jit Decl. ¶ 6(a).)

Roblox met its initial burden. (See *Espejo v. Southern California Permanente Medical Group* (2016) 246 Cal.App.4th 1047, 1060 ("the question before us—whether defendants may meet their initial burden to show an agreement to arbitrate by attaching a copy of the arbitration agreement purportedly bearing the opposing party's signature. We conclude they may, in compliance with the requirements of section 1281.2 and California Rules of Court, rule 3.1330."); *Condee v. Longwood Management Corp.* (2001) 88 Cal.App.4th 215, 218 ("For purposes of a petition to compel arbitration, it is not necessary to follow the normal procedures of document authentication.").)

Plaintiff's arguments in opposition regarding Defendant's initial burden, (Opp. at 5:20-6:24), are misplaced as the initial burden is not high and does not require the type of specificity Plaintiff asserts. (*Gamboa v. Northeast Community Clinic* (2021) 72 Cal.App.5th 158, 165 ("the moving party can meet its burden by setting forth the agreement's provisions in the motion.").)

***The FAA Applies to the Agreement***

The agreements contain express reference to the Federal Arbitration Act. (Jit Decl. Ex. 21 § 11. See e.g. *Victrola 89, LLC v. Jaman Properties 8 LLC* (2020) 46 Cal.App.5th 337, 355 ("But the presence of interstate commerce is not the only manner under which the

FAA may apply. As discussed above, the parties may also voluntarily elect to have the FAA govern enforcement of the Agreement, as they did here. This incorporation of the FAA prevents Victrola from using Section 1298.7 as an escape hatch from the parties' agreement to arbitrate.").) Plaintiff did not oppose application of the FAA. The Court finds the FAA applies.

***Plaintiff Satisfied the Second Gamboa Step***

"If the moving party meets its initial prima facie burden and the opposing party disputes the agreement, then in the second step, the opposing party bears the burden of producing evidence to challenge the authenticity of the agreement. . . . If the opposing party meets its burden of producing evidence, then in the third step, the moving party must establish with admissible evidence a valid arbitration agreement between the parties." (*Gamboa v. Northeast Community Clinic* (2021) 72 Cal.App.5th 158, 165.)

In opposition, Plaintiff provides declarations from Plaintiff and Plaintiff's mother, Evette Gibson. Plaintiff's declaration states "I do not remember accepting any EULAs, Terms and Conditions, or MSAs from any gaming company," and "I have not read through any EULAs, Terms and Conditions, or MSAs from any gaming company." (I.H.G. Decl. ¶¶ 6-7.) The Court notes Roblox's arbitration provision is not contained in any document with this title. Roblox's motion is supported by its Terms of Use, not Terms and Conditions. Gibson states "I have never seen or agreed to any Roblox Terms of Use, and I have never created a Roblox account for myself or on behalf of anyone else." (Second Supp. Gibson Decl. ¶ 9.)

The declarations are sufficient, though not particularly strong, evidence to meet the second step burden as to their accounts and agreements. (See generally *Iyere v. Wise Auto Group* (2023) 87 Cal.App.5th 747, 757 ("[T]he individual's inability to recall signing electronically may reasonably be regarded as evidence that the person did not do so."); *Gamboa, supra,* 72 Cal.App.5th at 165 ("The opposing party can do this in several ways. For example, the opposing party may testify under oath or declare under penalty of perjury that the party never saw or does not remember seeing the agreement, or that the party never signed or does not remember signing the agreement.").)

***The Evidence is Sufficient to Demonstrate Agreement to Arbitrate***

Accordingly, the burden shifts to Roblox to "establish with admissible evidence a valid arbitration agreement between the parties." (*Gamboa, supra,* 72 Cal.App.5th at 165.) In reviewing a motion to compel arbitration, the Court "sits as a trier of fact, weighing all the affidavits, declarations, and other documentary evidence, as well as oral testimony received at the court's discretion, to reach a final determination." (*Engalla v. Permanente Medical Group, Inc.* (1997) 15 Cal.4th 951, 972.)

"[T]he burden of authenticating an electronic signature is not great." (*Ruiz v. Moss Bros. Auto Group, Inc.* (2014) 232 Cal.App.4th 836, 844.) "[A] writing can be authenticated by circumstantial evidence and by its contents." (*People v. Skiles* (2011) 51 Cal.4th 1178, 1187.) "An electronic record . . . is attributable to a person if it was the act of the person. The act of the person may be shown in any manner, including a showing of the efficacy of any security procedure applied to determine the person to which the electronic record or electronic signature was attributable." (Civ. Code § 1633.9(a).) "The effect of an electronic record or electronic signature attributed to a person under subdivision (a) is determined from the context and surrounding circumstances at the time of its creation, execution, or adoption, including the parties' agreement, if any, and otherwise as provided by law." (Civ. Code § 1633.9(a).) "The party seeking authentication may carry its burden "in any manner," including by presenting evidence of the contents of the contract in question and the circumstances surrounding the contract's execution." (*Fabian v. Renovate America, Inc.* (2019) 42 Cal.App.5th 1062, 1068.)

Plaintiff's First Amended Complaint alleges "[i]ndividuals that wish to play Roblox must create a Roblox account" and "[i]n order to create a Roblox account, individuals must include a birthdate, username, and password." (FAC ¶¶ 90-91.) The FAC further alleges "[i]f each Defendant had not concealed, omitted, and misrepresented facts regarding the safety of their Products, EVETTE GIBSON would not have allowed IHG to use each Defendant's Products and Plaintiff IHG would not have purchased, downloaded, played, continued to

use, and/or purchased each Defendant's game content." (FAC ¶¶ 380, 405 421.) Plaintiff also admits to having "gaming accounts" relevant to this case. (I.M.G. ¶ 10.)

Defendant similarly confirms "[i]n order to use the Roblox platform, users must create an account and agree to Roblox's Terms of Use (the 'Terms'). Roblox periodically makes updates to its Terms. When Roblox deems an update material, Roblox users are notified of each of these updates via a pop-up notice displayed when users access the Roblox Platform. That notice includes a bolded hyperlink to the updated Terms and requires users to click to accept the new Terms in order to continue using the Roblox Platform." (Jit Decl. ¶ 8.) Defendant provides evidence there are "two Roblox accounts belonging to IHG, created on March 5, 2018 (the 'Gibson 2018 Account') and July 24, 2022 (the 'Gibson 2022 Account')." (Id. ¶ 6(a).)

"Roblox notified users of its August 2023 Terms via both on-platform blocker cards (pop-up notices) requiring affirmative acceptance and via an on-platform message sent directly to every user's 'Messages' page within their personal accounts one month prior to the effective date. The message was delivered one month prior to becoming effective and its delivery was emphasized with a notification on users' personal 'Messages' pages." (Id. ¶¶ 9-10.) The message noted there were updates to its Terms of Use, with a hyperlink thereto, that that "you – or if you are a minor your parent/guardian – will need to agree to the updated Terms of Use in order to continue using Roblox." (Id. ¶ 11.)

Additional pop-up notices were implemented on February 2024, June 2024, November 2024, and June 2025 noting that the Terms of Use had been updated with a link to the updated terms and requiring the user to click "I Agree" to proceed. (Id. ¶ 12.) The pop-up notices also directed minors to "show this to your parent or guardian." (Ibid.) The 2018 Gibson Account continued to be accessed and used after each notice. (Id. ¶ 13(a).) This Court agrees "Roblox has shown that its subsequent pop-up notifications gave adequate notice of the terms of use." (*G.G. v. Roblox Corporation* (N.D. Cal., June 5, 2026, No. 25-CV-10137-VC) 2026 WL 1615999, at *1.)

In addition to account creation, Roblox notes there have been 76 purchases of Robux on the Gibson 2018 Account with 64 being made since June 2023 and 15 purchases of Robux on the Gibson 2022 Account. (Jit Decl. ¶¶ 23, Ex. 1, 2.) Roblox details the processes of purchasing Robux "through a mobile app or with a credit card," "on a web browser," and "on a mobile device," including screenshots of the screens encountered by users. (Id. ¶¶ 15-22.) Roblox further details the process for an April 13, 2023 purchase of Robux on the Gibson 2022 Account. (Id. ¶ 24.) The right above the "Pay" button there is a paragraph indicating agreement with the Roblox Terms and arbitration clause therein. (Ibid.) Roblox further provides evidence of Evette Gibson's email and credit card being used in a 2025 purchase transaction for Robux in the Gibson 2018 Account. (Jit Decl. ¶¶ 18-20, 21, Ex. 1.)

Finally, the Gibson 2018 Account redeemed 10 Roblox Gift Cards between 2021 and 2024 and the Gibson 2022 Account redeemed 3 Roblox Gift Cards between December 25, 2022 and January 3, 2023. (Jit. Decl. ¶¶ 35-36, Ex. 11-12.) The redemption process requires logging into a Roblox account on the Roblox website. (Id. ¶ 30), and each redemption screen included a statement that redemption represented agreement to the Terms of Use "including the arbitration clause." (Id. ¶¶ 31-33.)

Plaintiff contends Defendant cannot not meet its burden because it cannot identify who "actually took any of the actions" Roblox attributes those responsible for Plaintiff's account. (Opp. at 9:20-11:18.) However, Plaintiff does not deny creating a Roblox account, neither Plaintiff nor Gibson deny purchasing Robux or redeeming Roblox gift cards, Plaintiff does not deny receiving the pop-up notifications or clicking "I Agree," and Gibson does not deny her email address and payment information being associated with the purchases. (See *B.D. v. Blizzard Entertainment, Inc.* (2022) 76 Cal.App.5th 931, 940 ("Plaintiffs opposed Blizzard's motion to compel arbitration on several grounds. . . . B.D. did not deny clicking the buttons labeled 'Create a Free Account,' 'Accept,' 'Agree,' or 'Continue.'").)

In *Garcia v. Roblox Corporation* (C.D. Cal., Feb. 11, 2026) 2026 WL 413636, cited by Roblox, that court confronted similar arguments and evidence, and conclude, "Plaintiffs attempt to muddy the waters of the Parent Plaintiffs' assent to the arbitration agreements by

arguing that Roblox's record 'never ties a purported 'click' to a named person' is wholly unpersuasive. . . . Asserting the contrary is intellectually dishonest." (*Garcia, supra*, 2026 WL 413636, at *3 n.3. See also *Tomlin v. Roblox Corporation* (E.D. Pa., May 20, 2026) 2026 WL 1412606, at *7 ("Rather, Plaintiff argues that 'Defendant does not know who specifically performed any of these actions such that a contract was validly formed with that particular individual.' [] In this Court's view, that does not create a genuine dispute." . . . the mere speculation that someone else could have had M.B.'s unique log-in information and could have been using M.B.'s account when the terms were updated is insufficient to establish a *genuine* dispute.").) While this court will not adopt "intellectually dishonest," the Court agrees with the thrust of the *Garcia* and *Tomlin* courts here: the likely clickers were IHG and his parents.

Plaintiff's reliance upon *Murphy v. Roblox Corporation* (S.D. Cal., July 9, 2025) 2025 WL 2327100, which is currently on appeal, is unpersuasive. In *Murphy*, the declarations in opposition were far more detailed by Plaintiff's here, affirmatively denying all interactions and transactions with the Roblox platform, including the specific purchase identified by Roblox. The court in Murphy also noted "it is not clear that Plaintiff linked his card information to the account or gave his child his permission to use it." (Id. at *6.) Here, Gibson acknowledges Plaintiff's access to Gibson's credit and payment data. (Second Supp. Gibson Decl. ¶ 10.) In the sur-reply, Plaintiff attempts to turn these facts in their favor. However, Gibson's granting of such access warrants holding Gibson to the Terms of Use. (See e.g. *Dunn v. Activision Blizzard, Inc.* (E.D. Ark. 2024) 749 F.Supp.3d 976, 982 ("Plaintiffs do not deny that the EA Accounts were created with Casey Dunn's email addresses and birthdate, that the creator of the accounts agreed to an arbitration agreement that covers this dispute or that her credit card was used to make Xbox purchases. . . . There was no reason for EA to question whether the user of the account was anyone other than Casey Dunn or someone to whom Casey Dunn gave authority.").)

Plaintiff also relies upon the declaration of asserted expert Kenneth Moyle, Jr., which ultimately does not aid Plaintiff. First, Plaintiff cites no authority that the methods asserted

are legally required. Second, while the Court acknowledges that the methods Mr. Moyle identifies would provide more clarity, the record here permits the Court to reach a "more likely than not" conclusion.

Plaintiff argues Roblox also failed to provide sufficient notice of its terms. (Opp. at 14:3-17:19.) The Court disagrees. "Courts have generally enforced agreements to arbitrate formed via 'clickwrap,' where an internet user accepts a website's terms of use by clicking an 'I agree' or 'I accept' button, with a link to the agreement readily available." (See *Weeks v. Interactive Life Forms, LLC* (2024) 100 Cal.App.5th 1077, 1084–1085.) Plaintiff summarily cites *Cruz v. Tapestry, Inc.* (2025) 113 Cal.App.5th 943 and *Sellers v. JustAnswer LLC* (2021) 73 Cal.App.5th 444 without analysis. The screenshot checkout screen in *Cruz* contains far more clutter and distractions from the terms hyperlink than any of the relevant Roblox transaction pages. (*Cruz, supra,* 113 Cal.App.5th at Appendix A.) The notice in *Sellers* similarly contains numerous differences from those presented here.

Plaintiff cites *Jackson v. Amazon.com, Inc.* (9th Cir. 2023) 65 F.4th 1093, 1100, in which the court noted "there is no evidence that the email allegedly sent to drivers adequately notified drivers of the update. The district court did not have the email, so it could not evaluate whether the email (assuming it was received at all) sufficed to provide individualized notice. Nor did the court have other evidence that might allow it to assess notice, such as a description of the email." The court also noted there was no evidence the user received the notices. Roblox provides each time both Gibson accounts acknowledged updated terms by clicking I agree. (Supp. Jit Decl. ¶¶ 8, Ex. 1-2.) Furthermore, Roblox provided notice of the updated terms within the Roblox account itself, not merely an email. *Jackson* is inapposite.

Plaintiff also cites *Snow v. Eventbrite, Inc.* (N.D. Cal., Oct. 19, 2020, No. 3:20-CV-03698-WHO) 2020 WL 6135990, wherein the defendant provided two vastly different screenshots of the login process without detail as to when the change was made relative to the dates the plaintiffs accessed the software. Plaintiff further cites *Dawson v. Target Corporation* (N.D. Cal., June 11, 2025) 2025 WL 1651940, in which the defendant used login

process information from 2022, which was irrelevant to an account creation in 2014. Here, Roblox provides descriptions and visual representations of each agreement point during the relevant time as well as when the agreements were accepted. (*Robbins v. Mscripts, LLC* (N.D. Cal., Sept. 5, 2023, No. 23-CV-01381-LB) 2023 WL 5723220, at *5 ("without any contradicting evidence about what the plaintiff saw, the court is not precluded from concluding as a matter of law that the plaintiff was on notice of mscripts's terms and conditions when he created his account.").)

Plaintiff also provides the declaration of Dennis K. McBride, Ph.D., which purports to demonstrate the "whether Roblox Corporation's Registration and Clickwrap Assent Design support meaningful assent by minor users using established human-factor principles." (McBride Decl. ¶ 10.) Plaintiff does not cite any authority supporting the use of expert testimony for this purpose. Plaintiff also does not cite any authority that a separate standard for reasonable notice applies to minors. (Fam. Code, § 6700 ("a minor may make a contract in the same manner as an adult."). See also *G.G. v. Roblox Corporation* (N.D. Cal., June 5, 2026) 2026 WL 1615999, at *1 ("Applying a "reasonably prudent child" standard here to render the agreement void—even when that same agreement would clearly be valid if the plaintiffs were adults—would contradict the legislature's command to treat minors "in the same manner as an adult" for the purposes of determining contract formation.").)

Roblox's evidence is detailed and specific regarding the existence of Plaintiff's account, through which Plaintiff accessed the game that serves as the basis for Plaintiff's claims herein, and numerous purchases of Robux to facilitate Plaintiff's gameplay. Roblox demonstrates the requirement that the user accept the Terms of Use, and its arbitration clause, to use Roblox and purchase its Robux currency. Plaintiff's "inability to recall [agreeing to the Terms of Use] does not afford an independent basis to find that a contract was not formed." (*Ramirez v. Golden Queen Mining Co., LLC* (2024) 102 Cal.App.5th 821, 837.)

Accordingly, the Court finds the evidence sufficient to demonstrate Plaintiff and

Gibson agreed to Defendant's Terms of Use through their use of the service, Plaintiff through playing Roblox and Gibson through Robux transactions.

***The Terms Do Not Exclude Minors***

Plaintiff argues the Terms of Use "excludes minors from the universe of contracting parties." (Opp. at 17:20-18:23.) Plaintiff notes the Terms of Use state "by using the services, you affirm that you have reached the legal age of majority in your jurisdiction and state of residence, and understand, accept, and agree to be bound and abide by the Roblox terms." (Jit Decl. Ex. 19, at 1-2; Id. Ex. 20, at 2; Id. Ex. 21, at 2.) The Court agrees with the district court in *G.G. v. Roblox Corporation* (N.D. Cal., June 5, 2026) 2026 WL 1615999, at *2: "Although the plaintiffs' interpretation seems plausible when this provision is read in isolation, the best reading of the agreement as a whole is that it applies to all users, including minors." The Court is not persuaded by Plaintiff's interpretation of the agreement's scope.

***A Parent is Capable of Binding a Minor to the Terms of Use***

Plaintiff challenges Roblox's contention that Gibson's agreement does not provide a separate basis to bind Plaintiff to the Terms of Use. (Opp. at 21:12-23:19; 24:21-25:26.)

Under California law, parents may contract on behalf of their children, including to arbitration agreements and liability releases. (See *Doyle v. Giuliucci* (1965) 62 Cal.2d 606, 610 ("the trial court correctly held that the contract between plaintiff's father and defendants provided for arbitration of her claim and that she was bound thereby."); *Eriksson v. Nunnink* (2015) 233 Cal.App.4th 708, 721 ("the right to disaffirm a minor's contract does not extend to a release of liability signed by a parent on behalf of the minor."); *Aaris v. Las Virgenes Unified School Dist.* (1998) 64 Cal.App.4th 1112, 1120 ("It is well established that a parent may execute a release on behalf of his or her child."); *Hohe v. San Diego Unified Sch. Dist.* (1990) 224 Cal.App.3d 1559, 1565 ("A parent may contract on behalf of his or her children. Civil Code section 35 was not intended to affect contracts entered into by adults on behalf of their children."); *Coughenour v. Del Taco, LLC* (2020) 57 Cal.App.5th 740, 748 n.1 ("Family Code section 6710 is nearly identical to Civil Code former section 35."); *Crowley Maritime Corp. v. Boston Old Colony Ins. Co.* (2008) 158 Cal.App.4th 1061, 1069–1070

("Under California law, a nonsignatory can be compelled to arbitrate . . . where a preexisting relationship existed between the nonsignatory and one of the parties to the arbitration agreement, making it equitable to compel the nonsignatory to also be bound to arbitrate his or her claim. . . . The preexisting relationship generally gives the party to the agreement authority to bind the nonsignatory. Examples of the preexisting relationship include . . . parent-child relationship. . . .").)

The Court finds Plaintiff's argument unpersuasive. (See also *A. A. v. Roku, Inc.* (N.D. Cal., May 14, 2026, No. 25-CV-06284-NW) 2026 WL 1349064, at *4 ("Multiple other district courts . . . have required minor plaintiffs to arbitrate pursuant to the parent-child relationship doctrine – regardless of the context of the contract, including for consumer goods.").)

***Equitable Principles also Bind Plaintiff to Arbitrate***

Roblox argues Plaintiff, even as a non-signatory, is bound to Terms of Service as a third-party beneficiary and based upon estoppel. (Mot. at 26:3-9; 31:3-32:19; Reply at 7:14-12:14.) "[W]hether a contract may be enforced by or against a nonsignatory to the contract is determined by principles of state law. [Citations] To that, there are six theories by which a nonsignatory may be bound to arbitrate: '(a) incorporation by reference; (b) assumption; (c) agency; (d) veil-piercing or alter ego; (e) estoppel; and (f) third-party beneficiary." (*Philadelphia Indemnity Ins. Co. v. SMG Holdings, Inc.* (2019) 44 Cal.App.5th 834, 840-841.)

Roblox argues "the minors are all third-party beneficiaries of the Terms. The Terms and the Responsible Adults' acceptance under these circumstances were intended to, and did, allow the minors' use of the Roblox Platform." (Mot. at 26:3-9.) Plaintiff does not address their third party beneficiary status in the opposition. The Court finds Plaintiff is a third party beneficiary of the Terms of Use. Plaintiff benefited from the Terms through access to the Roblox platform, the purpose of the agreement was to allow such use, and both the contract and the nature of the parties' relationship may it reasonable that the third party would be bound. (*Goonewardene v. ADP, LLC* (2019) 6 Cal.5th 817, 830.) The Terms of Use expressly require guardians to agree to the terms for minors to use Roblox. (Jit Decl. Ex. 18-21 ("By permitting a Minor User to use the Services, the Guardian of the Minor User becomes

subject to these User Terms and any other applicable Roblox Terms and agrees to be responsible for the Minor User's activities on the Services.").)

The Court also finds equitable estoppel binds Plaintiff to the Terms of Use. "Under the equitable estoppel theory, a nonsignatory is estopped from avoiding arbitration if it knowingly seeks the benefits of the contract containing the arbitration clause. Equitable estoppel, thus, precludes a party from claiming the benefits of a contract while simultaneously attempting to avoid the burdens that contract imposes.'" (*Philadelphia Indemnity, supra,* 44 Cal.App.5th at 841. See also *NORCAL Mutual Ins. Co. v. Newton* (2000) 84 Cal.App.4th 64, 84. ("The fundamental point is that respondent was not entitled to make use of the [contract] as long as it worked to her advantage, then attempt to avoid its application in defining the forum in which her dispute with [Defendants] should be resolved. Another maxim of jurisprudence is relevant here: 'He who takes the benefit must bear the burden.' (Civ. Code, § 3521.) 'No person can be permitted to adopt that part of an entire transaction which is beneficial to him/her, and then reject its burdens.' (*Halperin v. Raville* (1986) 176 Cal.App.3d 765, 772.").)

As Plaintiff acknowledges, estoppel applies where the non-signatory obtains a direct benefit from the contract. (Opp. at 23:25-24:11.) Plaintiff attempts to draw a distinction between playing Roblox or using Robux and benefiting from the Terms of Use. However, it is undisputed that access to Roblox and purchasing and redeeming Robux are entirely dependent on acceptance of the Terms of Use. Plaintiff's argument lacks merit and does not preclude the application of equitable estoppel. Plaintiff, through use of the Roblox platform and purchase of Robux, knowingly benefited from the Terms of Use and is bound by equitable principles.

***Plaintiff Cannot Disaffirm Another's Agreement to Arbitrate***

To the extent Plaintiff is bound to the Terms of Use due to Gibson's acceptance thereof, Plaintiff lacks authority to disaffirm the Terms of Use to which their parent agreed. (See *Eriksson v. Nunnink* (2015) 233 Cal.App.4th 708, 721 ("the right to disaffirm a minor's contract does not extend to a release of liability signed by a parent on behalf of the minor.");

*Hohe v. San Diego Unified Sch. Dist.* (1990) 224 Cal.App.3d 1559, 1565 ("A parent may contract on behalf of his or her children. Civil Code section 35 was not intended to affect contracts entered into by adults on behalf of their children."); *Coughenour v. Del Taco, LLC* (2020) 57 Cal.App.5th 740, 748 n.1 ("Family Code section 6710 is nearly identical to Civil Code former section 35."); *Doyle v. Giuliucci* (1965) 62 Cal.2d 606, 610 ("the trial court correctly held that the contract between plaintiff's father and defendants provided for arbitration of her claim and that she was bound thereby.").)

As noted herein, Plaintiff is bound as a third-party beneficiary. The ability to disaffirm "applies to contracts of minors and protects them from their own improvidence in assuming contractual obligations. It does not apply to contracts between adults and is therefore not controlling on the question of a parent's power to bind his child to arbitrate by entering into a contract of which the child is a third party beneficiary." (*Doyle, supra,* 62 Cal.2d at 609.)

In *Berg*, the court rejected defendant's contention "that a minor may not disaffirm an agreement signed by a parent," distinguishing *Doyle* and *Hohe*. (*Berg, supra,* 148 Cal.App.4th at 818.) The Court relied upon numerous facts not present here, including that "there is a statutory procedure governing contracts in which minors agree to render artistic or creative services, there is no danger that talent managers will decline to contract with minors absent their parents contracting on their behalf. . . . the agreement here did not merely require Craig to arbitrate his disputes, but created significant obligations on his part, notably, the payment of substantial monies to Berg." (*Id.* at 819.) The court further noted "[t]here is no public policy barring a minor from disaffirming a contract that imposes significant affirmative responsibilities on him." (*Ibid.*) The Court is not persuaded that *Berg* creates a categorical right to disaffirm contracts parents enter into on behalf of their children. Moreover, Berg expressly found the minor was not a third party beneficiary of the agreement. (*Ibid* ("Craig was not a third party beneficiary of the agreement signed by his mother, but a principal.").)

***Plaintiff Successfully Disaffirms His Personal Agreement to Arbitrate and the Delegation Clause***

Plaintiff's declaration states "[o]n the advice of my lawyers, I disaffirm any and all arbitration agreements I am alleged to have entered into in connection with any video game play. On the advice of my lawyers, I disaffirm all delegation clauses I am alleged to have entered into in connection with any video game play." (I.H.G. Decl. ¶¶ 8-9.) Plaintiff's declaration is dated May 4, 2026.

In *J.R. v. Electronic Arts Inc.* (2024) 98 Cal.App.5th 1107, the Court of Appeal addressed a minor's ability to disaffirm both an arbitration agreement and the associated delegation clause with Electronic Arts after agreeing to its User Agreement to access a video game. The court found the minor "disaffirmed '*any ... contract or agreement*' that he entered into with EA through his EA account." (*Id.* at 1116.) The court continued, "although the user agreement, the arbitration agreement, and the delegation provision are severable agreements under federal arbitration law (*Rent-A-Center, supra,* 561 U.S. at pp. 70–71, 130 S.Ct. 2772), it is equally true that J.R. II disaffirmed all three of those agreements, because all three of them were accepted through his EA account. The consequence of the disaffirmance in J.R. II's declaration is that there are no agreements between J.R. II and EA that J.R. II accepted through his EA account but has not disaffirmed. Therefore, as the trial court concluded, 'there is no arbitration agreement to enforce.'" (J.R., supra, 98 Cal.App.5th at 1116.)

Roblox invites this Court to ignore *J.R.* because, Roblox asserts, the case incorrectly applies *Rent-A-Center, West, Inc. v. Jackson* (2010) 561 U.S. 63, citing various federal district court opinions. (Reply at 14:26-15:25.) However, Roblox does not cite to any conflicting California authority. The court in *J.R.* expressly considered and rejected arguments that the disaffirmance, identical to I.M.G.'s here, was insufficient under *Rent-A-Center.* As such, this Court is bound by *J.R.* and must find Plaintiff disaffirmed their personal agreement to arbitrate and the delegation clause. (*Auto Equity Sales, Inc. v. Superior Court of Santa Clara County* (1962) 57 Cal.2d 450, 455 ("Courts exercising inferior jurisdiction must accept the law declared by courts of superior jurisdiction. It is not their function to attempt to overrule decisions of a higher court.").)

Roblox contends the continued use of Roblox defeats Plaintiff's disaffirmance. (Reply at 16:16-18:1.) However, none of the uses by the Gibson accounts post-date I.H.G.'s declaration disaffirming the agreements filed in opposition to the motion. (See e.g. Supp. Jit. Decl. ¶ 11 (omitting Gibson from list of those accepting April 30, 2026 update); Id. ¶ 12 (listing most recent use date for the Gibson accounts as April 3, 2026).) The Court does not find Roblox's argument persuasive.

***The Delegation Clause Sends Gibson's Unconscionability Defense to the Arbitrator***

The Terms of Use contain an express delegation clause: "The arbitrator, and not any federal, state, or local court or agency, shall have exclusive authority to the extent permitted by law to resolve all Disputes arising out of or relating to the interpretation, applicability, enforceability, or formation of the Roblox Terms, including, but not limited to, any claim that all or any part of the Roblox Terms is void or voidable . . ." (Jit Decl. Ex. 19-21 § 11.)

Thus, absent a specific challenge to the delegation provision, Plaintiff's unconscionability argument based on Gibson's agreements are delegated to the arbitrator. (*Fli-Lo Falcon, LLC v. Amazon.com, Inc.*, 97 F.4th 1190, 1199.) While Plaintiff's opposition purports to challenge the delegation provision as unconscionable, (Opp. at 29:8-30:26), Plaintiff does not support the argument with citation to any relevant authority or persuasive argument. Plaintiff did not meet his burden to avoid the delegation clause as unconscionable.

Accordingly, Plaintiff's claims are subject to arbitration through Plaintiff's parent, Evette Gibson's agreement to the Terms of Use and as a third-party beneficiary thereto.

**Conclusion**

Roblox Corporation's Motion to Compel Plaintiff to Arbitration is granted. The action is stayed pending the outcome of arbitration. Counsel for Defendant to give notice.

Dated: 7/15/26

Lawrence P. Riff
Judge of the Superior Court